**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

Revised 07/07 WDNY

Tracey Watson

_____

Name(s) of Plaintiff or Plaintiffs

**Jury Trial Demanded: Yes** X **No** ____

-vs-

Buffalo R. Erie County Public Library

New York State Education Department

Name of Defendant or Defendants

**DISCRIMINATION COMPLAINT**

_____ -CV- _____

24 CV 139-S

You should attach a copy of your **original Equal Employment Opportunity Commission (EEOC) complaint**, a copy of the Equal Employment Opportunity Commission **decision**, **AND** a copy of the **"Right to Sue"** letter you received from the EEOC to this complaint. Failure to do so may delay your case.

**Note:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

This action is brought for discrimination in employment pursuant to *(check only those that apply)*:

X Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.L.No. 102-166) (race, color, gender, religion, national origin).

> **NOTE**: In order to bring suit in federal district court under Title VII, you **must first obtain a right to sue letter** from the Equal Employment Opportunity Commission.

_____ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub.L.No. 99-592, the Civil Rights Act of 1991, Pub.L.No. 102-166).

> **NOTE**: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you **must first file charges** with the Equal Employment Opportunity Commission.

_____ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117 (amended by the Civil Rights Act of 1991, Pub.L.No. 102-166).

> **NOTE:** In order to bring suit in federal district court under the Americans with Disabilities Act, you **must first obtain a right to sue letter** from the Equal Employment Opportunity Commission.

**JURISDICTION** is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub.L.No. 102-166, and any related claims under New York law.

FILED FEB 12 2024 MARY C. LOEWENGUTH, CLERK WESTERN DISTRICT OF NY UNITED STATES DISTRICT COURT

**In addition to the federal claims indicated above**, you may wish to include New York State claims, pursuant to 28 U.S.C. § 1367(a).

_____    New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status).

## PARTIES

1.    My address is: _14460 Falls of Neuse Road Ste, 149-105 Raleigh, North Carolina 27614_

My telephone number is: _919-627-0879_

2.    The name of the employer(s), labor organization, employment agency, apprenticeship committee, state or local government agency who I believe discriminated against me is/are as follows:

Name: _Buffalo & Erie County Public Library_
_New York State Education Department - Office of Counsel_

Number of employees: _501 or more employees_

Address: _1 Lafayette Square, Buffalo, New York 14203_
_89 Washington Ave., Room 112 Main Education Building_
_Albany, New York 12234_

3.    (If different than the above), the name and/or the address of the defendant with whom I sought employment, was employed by, received my paycheck from or whom I believed also controlled the terms and conditions under which I were paid or worked. (For example, you worked for a subsidiary of a larger company and that larger company set personnel policies and issued you your paycheck).

Name: _____

Address: _____
_____
_____

## CLAIMS

4.    I was first employed by the defendant on (date): _October 7, 2021_

2

5.   As nearly as possible, the date when the first alleged discriminatory act occurred is: _____
     _____ October 7, 2021 _____

6.   As nearly as possible, the date(s) when subsequent acts of discrimination occurred (if any
     did): _____ March 17, 2022 _____

     _____

     _____

7.   I believe that the defendant(s)

     a. _X___      Are still committing these acts against me.
     b. _____     Are not still committing these acts against me.
     (Complete this next item **only** if you checked "b" above)   The last discriminatory act
     against me occurred on (date) _____

     _____

8.   (Complete this section **only** if you filed a complaint with the New York State Division of
     Human Rights)

     The date when I filed a complaint with the New York State Division of Human Rights is

     _____

     _ (estimate the date, if necessary)

     I filed that complaint in (identify the city and state): _____

     _____

     The Complaint Number was: _____

9.   The New York State Human Rights Commission did _____ /did not _____
     issue a decision. (**NOTE:** If it **did** issue a decision, you **must attach** one copy of the
     decision to **each** copy of the complaint; failure to do so will delay the initiation of your
     case.)

10.  The date (if necessary, estimate the date as accurately as possible) I filed charges with the
     Equal Employment Opportunity Commission (EEOC) regarding defendant's alleged
     discriminatory conduct is: ___ Amended Charge  8/8/2022 _____

11.  The Equal Employment Opportunity Commission did ____X_____ /did not
     _____ issue a decision. (**NOTE:** If it **did** issue a decision, you **must attach** one
     copy of the decision to **each** copy of the complaint; failure to do so will delay the
     initiation of your case.)

12.  The Equal Employment Opportunity Commission issued the attached Notice of Right to
     Sue letter which I received on: ___ 11/16/2023 _____. (**NOTE:** If it

**did** issue a Right to Sue letter, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.) *Also see EEOC Notice of Charge Transfer Attached.*

13.    I am complaining in this action of the following types of actions by the defendants:

a. _____    Failure to provide me with reasonable accommodations to the application process

b. _____    Failure to employ me

c. __X__    Termination of my employment

d. _____    Failure to promote me

e. __X__    Failure to provide me with reasonable accommodations so I can perform the essential functions of my job

f. _____    Harassment on the basis of my sex

g. __X__    Harassment on the basis of unequal terms and conditions of my employment

h. __X__    Retaliation because I complained about discrimination or harassment directed toward me

i. _____    Retaliation because I complained about discrimination or harassment directed toward others

j. __X__    Other actions (please describe) *Please see EEOC charge* _____

_____

14.    Defendant's conduct is discriminatory with respect to which of the following *(check all that apply)*:

a. __X__ Race

b. _____ Color

c. _____ Sex

d. _____ Religion

e. _____ National Origin

f. _____ Sexual Harassment

g. _____ Age
_____ Date of birth

h. ____ Disability
Are you incorrectly perceived as being disabled by your employer?
____ yes ____ no

15.    I believe that I was __X__/was not _____ **intentionally** discriminated against by the defendant(s).

4

16. I believe that the defendant(s) is/are __X__ is not/are not _____ still committing these acts against me. (If you answer is that the acts are not still being committed, state when: _____ and why the defendant(s) stopped committing these acts against you: _____

_____

17. **A copy of the charge to the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of my claim.** (**NOTE:** You **must** attach a copy of the **original complaint** you filed with the Equal Employment Opportunity Commission and a copy of the **Equal Employment Opportunity Commission affidavit** to this complaint; failure to do so will delay initiation of your case.)

18. The Equal Employment Opportunity Commission *(check one)*:
    _____ **has not** issued a Right to sue letter
    __X__ **has** issued a Right to sue letter, which I received on __11/16/2023__

19. State here as briefly as possible the *facts* of your case. Describe how each defendant is involved, including *dates* and *places*. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. *(Use as much space as you need. Attach extra sheets if necessary.)*

Please See attachment pages 1-14

## FOR LITIGANTS ALLEGING <u>AGE DISCRIMINATION</u>

20. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct
    _____ 60 days or more have elapsed    _____ less than 60 days have elapsed

## FOR LITIGANTS ALLEGING AN **AMERICANS WITH DISABILITIES ACT CLAIM**

21. I first disclosed my disability to my employer (or my employer first became aware of my disability on _____

22. The date on which I first asked my employer for reasonable accommodation of my disability is _____

23. The reasonable accommodations for my disability (if any) that my employer provided to me are: _____

_____

_____

24. The reasonable accommodation provided to me by my employer were _____/were not _____ effective.

**WHEREFORE**, I respectfully request this Court to grant me such relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees. *I declare under penalty of Perjury that the foregoing is true and correct.*

Dated: *2/12/2024*             *Troy Watson*

                    **Plaintiff's Signature**

## Complaint

## 19.) Facts of the Case:

1.) I am a Black American. I have been a Professional Librarian for approximately 6 years. I was employed by the above-named employer, Respondent, Buffalo and Erie County Public Library, in the Children's Department. I accepted the Buffalo and Erie County Public Library position on October 7, 2021, and my start date was on November 6, 2021. I enrolled and became a member of the above-named Union, Respondent, New York State United Teachers Union, the local name: the Librarians' Association of the Buffalo and Erie County Public Library on February 4, 2022. During that time, I worked as a Part-Time Children's Services and Outreach Librarian I. On or about October 7, 2021, and up until March 17, 2022, the Respondent intentionally and illegally discriminated against me based on race, harassed me, created a hostile work environment, treated me unequal and treated me differently than white employees, desperate treatment, retaliated against me, and wrongfully terminated me, in violation of Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a, 42 USC 1983, 15 U.S. Code § 2087. On February 15, 2022, my direct supervisor, Kristi Dougherty, Manager of Children's Services and Outreach, and the Recording Secretary for the New York State United Teachers Union, the local name: the Librarians' Association of the Buffalo and Erie County Public Library directed me to attend a Record of Counsel meeting on February 17, 2022, in the Human Resources Office where I was harassed, discriminated against because of my race, harassed and treated unequally and differently from white employees. On February 25, 2022, I met with Judy Fachko Assistant Deputy Director of Human Resources and verbally told her about how I was, illegally discriminated and harassed against because of my race, and treated differently and unequal. On March 14, 2022, I submitted a written grievance complaint of harassment and race discrimination to Jeannine M. Doyle, Interim Director of Buffalo & Erie County Public Library and Andrew Maines, President of the Librarians' Association of the Buffalo and Erie County Public Library President about how I was discriminated and harassed against because of my race and treated differently and unequal. On March 17, 2022, at 8:14 AM, I received an email from Jeannine Doyle, Interim Director stating, "Yes, I am in receipt of your grievance. Please accept this as noticed that your grievance is being denied, as counseling memorandum are not subject to the grievance process." Ms. Doyle refused to address my grievance complaint of harassment, race discrimination, being treated differently and unequal. The Union harassed, discriminated against me because of my race, and treated me differently and unequal and failed to advocate for me and subjected me to the future actions of the Buffalo and Erie county Public Library.

The Union worked with the employer in these illegal acts and practices against me. In retaliation, 21 days after submitting my grievance complaint of harassment, race discrimination, being treated differently and unequal to the Respondent, I was terminated by the Buffalo and Erie County Public Library. In addition, in retaliation, on March 17, 2022, at 8:14 AM, I received Ms. Doyle decision regarding my grievance complaint, and 4 hours later, I was terminated by the Buffalo and Erie County Public Library at 12:00 PM on March 17, 2022. I was also retaliated against by the Union for filing a grievance with the Buffalo and Erie County Public Library. On March 17, 2022, I was directed to attend a meeting by my direct supervisor, Kristi Dougherty, Manager of Children's Services and Outreach, Judy Fachko Assistant Deputy Director of Human

Resources, and Andrew Maines, President of the Librarians' Association of the Buffalo and Erie County Public Library and I was terminated. All the persons above were aware of my grievance complaint of harassment, race discrimination, and being treated differently and unequal. On March 18, 2022, I filed a Charge of Discrimination for harassment, race discrimination, and retaliation complaint with the EEOC. I believe that I have been discriminated against by the Respondent on account of my race (Black), harassed, and retaliated against on account of having complained of discriminatory treatment, treated unequally and treated differently than white employees, wrongfully termination, and for opposing unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 the Civil Rights Act of 1991; the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a; 42 USC 1983; 15 U.S. Code § 2087.

**2.)** The Respondent, Buffalo & Erie County Public Library Public System is severely lacking in diversity among Professional Librarians, and I was the only Black librarian who worked for Respondent at that time. My direct Supervisor, Kristi Dougherty, Manager of Children's Services and Outreach is white, Erin M. Burke, Children's Librarian is white, Judith Slawinski, Children's Librarian, is white, Kelly Woods, Children's Librarian is white, Jennifer Lelinski, Children's Librarian is white, Lucylle K. Castaneda, Library Assistant is white, Andrew Maines, President of the Librarians' Association of the Buffalo and Erie County Public Library is white, Judy Fachko Assistant Deputy Director of Human Resources is white, and Jeannine Doyle, Interim Director is white. The Children's Department does not have a full-time black Librarian on staff. I believe this disparity is based on race and is part of a pattern of practice and black Librarians in the Children's Department are treated differently than white Librarians.

**3.)** Throughout my employment, I believe the Buffalo and Erie County Public Library treated me differently and unequally than white employees/Children's Librarians for examples:

a. I was not afforded a sign-on bonus, while other white employees/Children's Librarians were given that bonus.

b. On January 10, 2022, 3 months after being hired by Respondent, I went to check out books for my Celebrate Black Inventors program and the woman at borrower services told me I was not in the system as an employee which impede my ability to do my job. The white Librarians were in the system as employees,

c. On January 10, 2022, 3 months after being hired by Respondent, I went to check out books for my Celebrate Black Inventors program and the woman at borrower services told me I did not have a staff profile in the library system, which also impeded my ability to do my job. The white Librarians had staff profiles in the system,

d. The white Librarians efforts for their programming were published on time and accordingly, but my programming was not,

e. I asked the Respondent multiple times for the library collection development software training, but I was never trained. All the white librarians were trained and had access to the software system. I was not given access to the software system,

Page 2 of 14

f. I and the other only black Senior Page, Nancy Smith, were always placed on the schedule at the Children's Reference desk during the highest patron volume times.

g. Although, I have made multiple requests to Respondent, I was denied access to the Children's Department Google account while all the other white librarians were given access to the account,

h. When I work a full 8 hours, Respondent told me that I don't get a 1-hour lunch break like the other white Librarians,

i. On December 15, 2022, I emailed my manager Kristi Dougherty and provided her with a proposal for my Celebrate Black Inventors program, which was scheduled for February 19, 2022. I provided her with a list of materials I would need, but she did not purchase those items. However, when white librarians made orders, they got exactly what they requested. As a result, I did not have the materials I needed for my event, and I needed to get them. When other white librarians make requests for their programming, they get exactly what they asked for. Judith Slawinski, Librarian I, white, told me she always gets what she orders and the exact materials that she orders. She said she orders her own materials too and if she does asks Mrs. Dougherty to order something for her; she gets what she requested. I was not given access to accounts or credit card information nor a privilege to order materials for programing like the white librarians. In the proposal, I also requested that Respondent provided me with adequate staffing for the event, but I was not provided with adequate staffing for my program. The white librarians get proper staffing for their programming,

j. On March 3, 2022, the Respondent installed additional telephones in the Children's Department area, because the phones were only on the Black employees' side, and we were told if the phone rang, we had to answer it. On the white librarian's side there weren't any phones; they did not have to answer the phone,

k. I was not granted the same privileges to work remotely like the other white Librarians in my department,

l. I asked the Respondent if I could be in attendance via Zoom for the online presentations of the finalist candidates for the Director position, and I was told no, but that I could tune in after I get off desk. After my desk shift, and as I went upstairs to the workroom, when I look around all the Blacks were on desk, even at the borrower's services counter, but when I went upstairs all the Whites were sitting viewing the interviews. The Respondent denied me and other Black employees the right to provide comments and feedback in relations to the candidates. I know this discriminatory act took place system wide. Dorinda Darden, Assistant Deputy Director – Public Services, Buffalonian, was the only black candidate, and she has worked for the Respondent for years and a white man out of Chicago, *John Spears*, received the job,

m. After discussing with Mrs. Dougherty on Thursday, February 17, 2022, during the Record of Counsel meeting how I was treated by Ms. Burke, Children's Librarian, white, Mrs. Dougherty directed Ms. Burke, *without telling me*, to oversee my Celebrate Black Inventors program on Saturday, February 19, 2022. On the day of the event, Ms. Burke came up to me and said Mrs.

**Page 3 of 14**

Dougherty direct her to oversee my event to make sure everything runs well and to assist me if I needed anything. Ms. Burke walked around like a white overseer my entire program.

n. I asked the Respondent multiple times for a part of the children's collection to develop and maintain, and the Respondent never did give me a section. The white librarians had collection development assignments. Mrs. Lelinski was just recently hired approximately a month and a half after me, and the Respondent assigned her a part of the collection to maintain. I wanted to do work in my profession as well like the white librarians, but I was denied. Maintaining, working with in the collection, its' a part of librarianship I was denied by the Respondent.

o. On December of 2022, the Respondent told Ms. Castaneda to go downstairs to harass me while I was on desk.

p. In March of 2022, All the white librarians worked together and collaborated to work on a school tour visit, but the Respondent did not include me,

q. On March 14, 2022, 3 days before I was terminated, when I arrived at my desk in the morning at 9:00 AM, someone had placed a small empty box on my desk with a reference desk schedule. I emailed the Respondent at 9:14 AM asking who left the empty box and the schedule on my desk.

r. In retaliation, on March 17, 2022, at 8:14 AM, the Respondent denied and refused to address my grievance complaint of Race Discrimination, Harassment, Retaliation, and being treated differently and unequaly throughout my employment. 4 hours later, on March 17, 2022, I was terminated by the Respondent.

s. The white librarians programming was given recognition through Respondent public publication and my programming was not.

4. On February 15, 2022, I received a directive from Mrs. Dougherty to attend a Record of Counsel meeting on Thursday, February 17, 2022, in the Human Resources Office with Lucylle Castaneda. She ordered me to attend this meeting approximately 1.5 days before my Celebrate Black Inventors program. Mrs. Dougherty stated that she wanted to discuss communication matters with both Lucylle Castaneda and me. She also stated the meeting was not a disciplinary meeting. She went on to state this is a counseling meeting to develop strategies. During the Record of Counsel meeting Mrs. Dougherty explicitly stated the reason she directed us to the meeting was because of an incident that allegedly happen on Monday, February 14, 2022, during a desk change at 5:06 PM between me and Ms. Castaneda. In the Record of Counsel meeting, Mrs. Dougherty discussed with me "for the first time" allegations of misconduct that she never orally or otherwise discussed with me prior to the meeting. During the meeting, Mrs. Dougherty told me that Lucylle Castaneda had made reports that I was intimidating her:

a. Mrs. Dougherty stated in the meeting, "*So on Monday February 14th there was a desk change from 5 to 6 pm. Lyculle was a few minutes late for the desk shift because she needed to use the bathroom. It was reported to me that Tracey asked Lucylle if she knew what time it was, and Lucylle answered she didn't know. Tracey asked Lucylle if she could come early because it was*

*5:05 and she clocked out at 5:00.*" As I explained to Mrs. Dougherty; since I started on November 6, 2021, approximately 3 months ago, I can count on one hand how many times Ms. Castandea and I have even talked/communicated. The majority of those times were me saying good morning and Ms. Castandea not even acknowledging my presence and saying absolutely nothing in return. I stated I do not have a communication issue with any of my co-workers. As I explained to Mrs. Dougherty during the Record of Counsel meeting, the only three interactions I have had with Ms. Castaneda is when she came to my desk in the workroom and showed me a picture of her cat; when I came downstairs to ask her in front of Nancy Rypinski and Sumia Akter, Pages, if there was any more black card stock paper for lettering for my Celebrate Black Inventors program exhibits, and the third time I interacted with Ms. Castaneda was on the day of the alleged incident that took place on Monday, February 14, 2022, at 5:06. It was apparent in the meeting Mrs. Dougherty spoke with Ms. Castaneda about what she believed happened, but Mrs. Dougherty never spoke to me about the alleged incident before the meeting. During the meeting, it was evident that Mrs. Dougherty believed whatever Ms. Castaneda told her I did.

b. Next, Ms. Castaneda reported to Mrs. Dougherty that I allegedly knocked on the workroom door aggressively. Ms. Castaneda then stated during the meeting, "*Why do I think about the day... you I had on the workroom you then you go knock knock knock like this,*" (Ms. Castaneda banged on the table several times) ... It made me jump in my seat. I then said to Ms. Castaneda, "Say that again I'm confused say that again." Ms. Castaneda goes on to state, "*One day I don't remember the month ...*" then Mrs. Dougherty rudely cuts Ms. Castaneda off from talking and stated, "*I have the day right here because you did bring this to my attention because its not something I perceived. On Saturday, December 11th there was a situation that Lucille brought to my attention from the 1 to 2 pm desk shift via email. Lucille arrived for her shift at 12: 56 pm and didn't let Tracey know she was there for the desk shift. she was in the workroom. Tracey knocked repeatedly on the door rather than going into the workroom. This was perceived by Lucille as an aggressive act and made her nervous for the rest of the day. This incident nothing like this was ever repeated. I told Lucylle let your colleagues know when your there for a shift.*" Ms. Castaneda then said "*No.*" Mrs. Dougherty went on and she did not allow Ms. Castaneda to speak stating, "*And I did also explain that Tracey was still learning desk shift transitions at that point her 1st library date was Nov 8 so part time you only been on desk like a handful of times, and she could leave her desk when they arrive however I do know that the incident did bother you.*" I then stated, "Why would I go and knock on the door; I've never done that to you that's a lie."

In the meeting, I asked Ms. Castaneda, "Are you in fear of me Lucylle.? Ms. Dougherty then stated, "*You can be honest.*" Ms. Castaneda states, "*Yea because since the beginning I told Kristi about the incident with the door or whatever.*" Ms. Castaneda went on to state, "*Look at me, look at me right now if I can't... if I am upset.*" Ms. Castaneda began to shake. Ms. Dougherty looks at me and stated, "*I wanted you to see that.*" Mrs. Dougherty want me to see Ms. Castaneda shaking. I could not believe what I was hearing and seeing from both Mrs. Dougherty and Ms. Castaneda, because I haven't done anything to Ms. Castaneda or any other staff member. While Ms. Castaneda went on shaking, I stated I met a Caucasian father, you remember this, I said with his two young sons tell me... then Ms. Castaneda cut me off from speaking and in her true voice not her passive voice she had been using during the meeting said, "*What, Say that again; say that again?*" ... I continued stating, "You were very nasty to him and rude you even said the Fuck

word in front of him and his children and he said he even reported to you. "You" I pointed to Ms. Dougherty. Mrs. Dougherty then uncontrollably blurted out, *"That issue has already been dealt with."* The father told me that Ms. Castaneda was downright cocky – negative body language, tone, and all, nasty, rude, and intimidating to him and his young boys. He said she said the work "Fuck" in front of him and his young children. He told me he reported what happened to Mrs. Dougherty and I'm sure since she has been keeping a bogus record on me; she should surely have the man's complaint and contact information about what Ms. Castaneda said and did to him and his young children (boys) at the reference desk in the children's area of the library. Why didn't the Buffalo and Erie County Public Library terminate Ms. Castaneda immediately after the father's complaint? Why, because she is white. I have audiotape of the entire meeting.

Mrs. Dougherty then goes on to state, *"It's doesn't necessarily have to be verbal transaction body language .. just; how your looking at someone."* First the issue was with what I said verbally and now it's my body language and how I'm looking at others.

Mrs. Dougherty went on about how she wanted to help me with mindfulness stating, *"I want to work with you on your body language your tone, I want you to be more mindful."* Mrs. Dougherty used the word "tone and body language" towards me during the meeting about a million times. I said to Mrs. Dougherty, "Yea I'm the angry black woman huh?" I told Respondent in the meeting that I was being discriminated against and being characterized as an angry black woman. There I was, in a Record of Counsel meeting having to listen to the Respondent describing Ms. Castaneda as this easily frightened, delicate, shy person that needs to be taught how to stand up for herself vs me the angry black woman who needs to be taught how to not be aggressive, angry, intimidating, hostile, ill tempered, bitter, loud, or too straight forward etc… While in the Record of Counsel meeting, the Respondent humiliated and embarrassed me in front of my coworkers (Lucylle Castaneda, Library Assistant (W) and Jennifer Lelinski, Children's Librarian I, Union Representative in the meeting (W)

c. Ms. Castaneda then said there was another incident that happened between she and I, and she stated in the Record of Counsel meeting, *"And another day I went downstairs, and I told you I am here for my shift because Kristi told me to do it."* "KRISTI TOLD ME TO DO IT," In reflecting on what Ms. Castaneda said, I remember her doing this. I said nothing in response. I was confused and it made me feel awkward, but I thought to myself why is she telling me this. I just look at Ms. Castandea very confused by her behavior and walked away from the desk. What else has Mrs. Dougherty told/directed Ms. Castaneda and/or other staff members to say or do to me?

Mrs. Dougherty also violated the Rule 5 set out in the Buffalo and Erie County Public Library Employee Handbook 2021 Edition section on Removal and Other Disciplinary Actions. On page 9, section Group A (Violations may result in immediate discharge), it states in rule 5, "Threatening, intimidating, or coercing any fellow employee or member of the public in any manner, including violations of the B&ECPL's Workplace Violence Policy."

Moreover, according to the Buffalo and Erie County Public Library Personnel Policies and Procedures Manual Chapter 8 Equal Employment Opportunity and Anti-Harassment Section 1(B) Unlawful Harassment states, "The B&ECPL will not tolerate unlawful harassment of its

employees by any supervisor, coworker, volunteer, patron, or any other person with whom employees may come into contact during work. Similarly, the B&ECPL will not tolerate its employees engaging in unlawful harassment of co-workers or of non employees with whom they come into contact during work, including but not limited to job applicants, vendors, contractors, patrons and volunteers."

d. After discussing what we were directed to attend the Record of Counseling for, strategies on how to communication the way Mrs. Dougherty directs us to, Mrs. Dougherty then goes on to state in the meeting, "*All right, the next thing I'm going to have you do. There are papers in front of you that I want you to turn over because there are other issues that need to be addressed as well. One will be a copy for you. One will be a copy for human resources. There are wording that are used that is based on various policies there may be some words on there that may be upsetting so I just want you to take a few moments and read through it because there some other issues you want to address.*" On the Record of Counseling form, Mrs. Dougherty writes under the Conduct section: Tone of Voice, Body Language, Noise Level has intimidated Staff – Specifically during reference desk transitions and in workroom interactions, utilizing cell phone and loud personal dialogue disrupts work of colleagues in workroom. On the Record of Counseling form, she goes on to write under the Applicable Policy, Rule or Regulation section: Discourteous treatment of co-workers/interfering with employee work routine and Employees should leave their cell phone in their locker, silenced, or turned off during work hours. Personal cell phones may be used during break and lunch periods. Such use must not disrupt the work area.

I asked Mrs. Dougherty besides Ms. Castaneda, who lodged the complaint that triggered her to counsel me on communication strategies? Mrs. Dougherty responded, "*That I am keeping anonymous because the people that came to me they were afraid of they were afraid they were intimidated and they ask that I specifically who the names of those people were I have them were I can share them with human resources specific reports, dates and time unfortunately they were intimidating is the word I would use unfortunately.*" So, I asked Mrs. Dougherty, so I have allegations alleged against me and I don't have a right to know who these people are and what they have said? Mrs. Dougherty responded, "*It's not necessarily an allegation; it is people have come to me and this record of counseling this is basically the first step this is the first step this is an issue that is happening, I want you to see that how you're communicating is having an effect on other staff members.*" Mrs. Dougherty's above statements are not written on the Record of Counsel document. According to the Buffalo and Erie County Public Library Personnel Policies and Procedures Manual Chapter 3 Progressive Discipline – Union Employees Section 7 (II)(C)(1) states, "1. All warning notices, disciplinary actions, etc. should be documented in detail. A copy must be presented to the employee ...." In this meeting, I was informed that others have complaints about me, but I was not given who, what, when, where, why and how. I still do not know who these alleged people are and what they said I did for them to be in fear of me. During the meeting, Mrs. Dougherty said she spoke with these alleged people who gave her complaints about me. Again, Mrs. Dougherty never asked/questioned me about any of these alleged incidents to obtain information from me nor allowed me to defend myself regarding the misconduct that she, Ms. Castaneda, and the alleged others have accused me of. My due process rights have been grossly and illegally violated. Ms. Dougherty bogus Record of Counsel can be used against me for the basis of future discipline or termination, so I wrote and invoke a written

**Page 7 of 14**

grievance complaint of harassment and race discrimination. While in the Record of Counsel meeting, Mrs. Dougherty humiliated and embarrassed me in front of my coworkers (Lucylle Castaneda, Library Assistant (W) and Jennifer Lelinski, Children's Librarian I, Union Representative in the meeting (W). Just as I heard about the 5:06 PM incident above in the meeting for the first time, I was hearing about all the other alleged misconduct for the first time in front of my coworkers.

e. I would like to point out, Mrs. Dougherty made the directive to meet at Human Resources on the last day of my work week (Thursday February 17, 2022, at 10:30 AM) and 1.5 days before my Celebrate Black Inventors program on Saturday, February 19, 2022, at 2:00 PM.

Instead of me focusing on my upcoming program: finalizing audio, set up etc…like the white librarian are allowed to do, I found myself so disturbed, and ill from the meeting. So ill and disturbed physically, mentally, and emotionally that I needed to go home. Mrs. Dougherty stated Ms. Castaneda told her about the alleged knock, knock, knock on the door incident on December 11, 2021, approximately 3 months before the Record of Counsel meeting and I am hearing about it in the Record of Counseling meeting on February 17, 2022, 1.5 days before my Celebrate Black Inventors program. I believe Ms. Dougherty purposefully chose to give me a Record of Counseling less than 1.5 days from my program event that I had worked on for months. She interfered and sabotaged my ability to finish completing my work for my program while I was on the job.

Moreover, according to the Buffalo and Erie County Public Library Employee Handbook 2021 Edition Section on Removal and Other Disciplinary Actions Group A (Violations may result in immediate discharge) sections 9 states on pages 9-10, "9. Deliberate restriction or interference with the work performed by your department or work unit or that performed by another person."

f. Directly after the Record of Counsel meeting and while I was talking with Sandra Courtney, Small Business Librarian, in the upstairs workroom, the phone rang in the Children's workroom area. Ms. Castaneda answered the phone and she told me that Mrs. Lelinski wanted to speak with me. Ms. Castaneda told me 3 times to come around to her desk to take the call. I told Ms. Castaneda I would not be coming around to her desk and then she said just take the phone from my hand over the cubicle wall. She had the phone in her hand dangling it across the cubicle over my desk. I told her I did not want to take it from her hand. I was in fear that she would falsely accuse me of touching or hitting her hand. I then asked her to please tell Mrs. Lelinski to call again and I will pick up the phone from my side of the cubicle. If Ms. Castaneda was so afraid and intimidated by me, why would she ask me to come over to her desk to take the call. Ms. Lelinski was on the phone and Mrs. Courtney and others heard Ms. Castaneda ask me to come to her desk to take the call. After asking for permission to leave work and getting approval to leave for the day at 12:00 PM due to being so disturbed and ill by the meeting, before leaving, I went downstairs to speak with Mrs. Lelinski about Ms. Castaneda asking me to come over to her desk area to get the phone. Mrs. Lelinski heard Ms. Castaneda while waiting on the phone to speak with me. Mrs. Lelinski, Union Representative, Respondent, was in the Record of Counsel meeting while Mrs. Castaneda started shaking while professing to be scared and frightened of me.

5. On February 15, 2022, I also asked the Buffalo and Erie County Public Library for union representation for the Human Resources Record of Counseling meeting on February 17, 2022. As stated above, Mrs. Dougherty is a Union member, and she is the Recording Secretary for the Union. The Buffalo and Erie County Public Library told me union representation would be provided. As Mrs. Dougherty states in her email to me dated February 16, 2022, "*City Libraries Representative Jennifer Lelinski will be sitting in during the meeting to ensure that your rights, as laid out in the Librarians Association contract, are not violated...*" As to union representation in this matter, I was asked by Ms. Fachko, during our Friday, February 25, 2022, meeting, if I asked for Mrs. Lelinski to represent me during the Counsel of Record meeting on February 17, 2022. I told her no. Ms. Fachko also told me that it would be useless to file a grievance. She said nothing would come of it. I found it highly unethical since Mrs. Lelinski was newly hired and a colleague "an equal" in the Children's Department to be representing me. I never asked for her to represent me during the Counsel of Record meeting. The Union did not say a word during the entire meeting. I look to the Union to represent me, but it said nothing to defend my interest or rights. Just as in the Record of Counsel meeting, the Union said nothing to help or defend me in the termination meeting. I do recall Mr. Maines stating in the work room that he had been working with Human Resources all day. The Union failed to advocate for me and subjected me to the future actions of the Buffalo and Erie County Public Library, retaliation and termination me from its membership as well. I believe that the Buffalo and Erie County Library and the New York State United Teachers Union, the local name: the Librarians' Association of the Buffalo and Erie County Public Library colluded in harassing, discriminating, retaliating, and wrongfully terminating me. The failure to take action by the Union is contrary to its collective bargaining agreement.

6.) According to the Unions contract "Agreement" between The Buffalo and Erie County Public Library and the Librarians' Association of the Buffalo and Erie County Public for the years 2021, 2022, 2023, 2024, it states in under Article 6 – Grievances sections 6.1.5 Representation states, "*The Library shall furnish to the Association a list of its representatives for each level of the grievance procedure. The Deputy Director or designee at Level I normally will be the Deputy Director or designee responsible for the Branch Library or Central Library department from which the grievance originates ... The Association shall furnish, to the library, a list of its representatives for each level of the grievance procedure.*"

According to the Contract Agreement section 6.4 Disciplinary Proceedings 6.4.1 General states. "*...Whenever feasible, the Board, Contract Library Director, Administrator, or designee, as appropriate, shall follow a policy of progressive discipline.*" It goes on to state in section 6.4.2 Notice of Discipline. "*If a representative of the Board, Library Director, Contract Library Director, Administrator, or designee, as appropriate, seeks to discipline or discharge a full-time, regular part-time, or part-time Librarian or Librarian Trainee, a written Notice of Discipline shall first be personally served upon the Librarian and the president of the Association; if personal service is not reasonably possible, service can be made by certified mail-return receipt requested. The Notice of Discipline shall contain the penalty being imposed and the reasons for the discipline, including a detailed description of the alleged acts and/or conduct complained of with dates, times, and places.*"

The policy of Progressive discipline was not followed, and I never received a Notice of Discipline; instead, I received a termination letter in a HR meeting room and was escorted out of the building by security. The Union said nothing on my behalf. I and the President of the Union, Andrew Maines works in the Central Library location where the Human Resources department is located.

On March 14, 2022, I submitted my written grievance on the (Appendix E) form within the time limits of the contract to Jeannine M. Doyle, Interim Director of Buffalo & Erie County Public Library and Andrew Maines, President of the Librarians' Association of the Buffalo and Erie County Public Library. As stated in section 6.2.2 of the Contract, I requested, in my grievance complaint, an informal hearing. According to the Contract Agreement, the Library Director should have held an informal hearing within ten (10) consecutive working days after the submission of my written grievance complaint; instead, I was terminated 3 days later. The Library Director never render a decision in writing within ten (10) consecutive days of my grievance nor did the Union say anything about the library not following it legally Contract Agreement with the library. I heard nothing from the Union because I was terminated and even during the termination meeting the Union said nothing on my behalf. As shown above, the Buffalo and Erie County Public Library violated the collective bargaining agreement, and the union breached its duty of fair representation by allowing the breach to go unchecked/not corrected.

I was terminated on March 17, 2022, at about 12:00 PM and on the same day of my termination, on March 17, 2022, at 1:29 PM, John Gaff, Communications Officer for Librarians' Association of the Buffalo and Erie County Public, emailed members stating, *"Greetings everyone! I just wanted to remind you that the Librarians Association is hosting a General Membership Meeting tomorrow, March 18th, at 8:00 PM via Zoom..."*

On March 17, 2022, at 3:55PM, I emailed Mr. Gaff stating, *"Hello John, I was wrongfully fired today; I would like to be present at the Zoom meeting. Tracey Watson."*

On March 18, 2022, Mr. Gaff responded to my emailed stating, *"Hello Tracey, In accordance with New York State law, when hired for a permanent position there is a probationary period. During the probationary period, an employee can be removed from service without cause. As you are no longer employed by the Buffalo & Erie County Public Library, you are no longer a member of the Librarians Association and therefore you are ineligible to attend member meetings. I wish you well, John."* I found out my Union membership was terminated by the Union on March 18, 2022.

On March 21, 2022, I replied stating, *"Hello and Good morning Mr. Gaff, My union dues were deducted out of my paycheck for this month. It is my understanding that the Union is separate from the employer. Thank you Sincerely, Tracey Watson."*

The union did not follow its own Agreement, nor did it represent/advocate for me against the library according to its Agreement. The Union breached its duty of fair representation which denied me my Contractual and human rights. As a member, I was denied fair union representation and it did not advocate for me during any of the procedures or processes, and it

colluded and subjected me to retaliation, termination, and a hostile work environment because of my race, in violation of Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a; 42 USC 1983; 15 U.S. Code § 2087. Because of the above illegal actions and practices taken by the Respondent in violation of Title VII of the Civil Rights Act of 1964 and as amended by the Civil Rights Act of 1991 and the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a; 42 USC 1983; 15 U.S. Code § 2087. The Union also retaliated against me. My grievance was intentionally not managed, and the Union deprived me of employment opportunities, and it adversely affected my status as an employee based on a discriminatory reason, my race.

**7.)** In the second meeting, on February 25, 2022, I met with Judy Fachko Assistant Deputy Director of Human Resources to discuss the Record of Counsel meeting and how I was treated. I described to Respondent, how I was harassed and being discriminated against because of my race. While I was waiting for my meeting with Respondent, I heard Ms. Fachko say to whomever she was speaking to over the phone, she is in my waiting room, scary wait. I was the only person in the entire area.

In the meeting, I explained what happened with Ms. Castaneda and I shared that Mrs. Dougherty did not provide me with the opportunity to defend myself against alleged allegations from other alleged workers. I said Mrs. Dougherty told me she couldn't disclose the name, place, time of what I'm being accused of by these other people. Ms. Fachko responded, "*I can tell you we wouldn't ... if someone came and said those things to me... I wouldn't say...people do do that ... come and say... and I would say... I don't say so and so said this about you. I'd say it has been reported to me that these things occurred these things happen.*" I then said, "I didn't get that... I didn't even get what they reported" Ms. Fachko then replied, "*If someone said I want to know who said I wouldn't reveal that either.*" I then said "Ok." Ms. Fachko then stated, "*Just because of confidentiality and privacy if you came and told me I had to speak to someone I wouldn't say Tracey told me this. I would say someone told me this and I need to speak to you about it and if they said I want to know who said it well that's not what we're talking about were talking about your behavior your question whatever so... I can say I wouldn't either.*" I responded, "These people who ever she's talking about she lumped them all in one group. She never specific gave me incidents she might not have to say the persons name, but at least given me the incidents that your referring to ..." Ms. Fachko goes on to state, "*Ok, I assume it's just who works in the work room.*" I then state, "I think I deserve if you're going to if people are going to throw allegations at least give me the incident or the time or the date whatever so I can rebut that or tell you my side of the story." I then told Ms. Fachko I would be submitting a grievance complaint of what has happened to me. Ms. Fachko went on to state, "*If Andrew brings a grievance forward our response would be a grievance cannot be filed because a counseling is not discipline... It's not part of the progressive discipline steps. It's just a conversation and we do tell managers when you do have conversations record them on counseling.*"

**8.)** In the third meeting, on March 17, 2022, at approximately 12:10 PM, I was retaliated against and terminated by the Buffalo and Erie County Public Library and the New York State United Teachers Union, the local name: the Librarians' Association of the Buffalo and Erie County Public Library. In the meeting was Judy Fachko, Assistant Deputy Director – Human Resources, Andrew Maines, President, and Kristi Dougherty, Manager of Children's Services and Outreach.

The Buffalo and Erie County Public Library terminated me from my position for totally different alleged reasons, in part, for alleged failure to maintain reasonable productivity, repeated instructions on electronic schedule access and desk transition procedures, performing personal business during B&ECPL working hours, performing unapproved work business and outreach during personal hours. The above additional alleged reasons for terminating me were not discussed with me either. I heard about the alleged reasons for terminating me for the first time when I was terminated on March 17, 2022, which is also contrary to the Union's Contract Agreement.

**9.)** Because of the above illegal actions and practices taken by the Respondent in violation of Title VII of the Civil Rights Act of 1964 and as amended by the Civil Rights Act of 1991 and the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a; 42 USC 1983; 15 U.S. Code § 2087. I am suffering from the following injuries/harms: emotional distress, hopelessness, pain, inconvenience, mental anguish, loss of enjoyment of life, sleeplessness, anxiety, loss of appetite, stress, depression, humiliation, loss of self-esteem, excessive fatigue, nervous breakdowns, crying out of nowhere, headaches, shock, indignity, apprehension, isolation, grief etc... professional standing, injury/harm to character and reputation, injury/harm to future jobs, injury/harm to applying for certificates, not being able to apply/find comparable work, loss of experience etc. I have loss income and I would have gone on to apply for a full-time librarian position.

**10.)** The Respondent has intentionally and illegally discriminated against me based on race, harassed me, created a hostile work environment, treated me unequal and treated me differently than white employees, desperate treatment, retaliated against me, wrongfully terminated me, breached of the duty of fair representation, and unfair labor practices in violation of Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a; 42 USC 1983; 15 U.S. Code § 2087. Because of the above illegal actions and practices taken by the Respondent in violation of Title VII of the Civil Rights Act of 1964 and as amended by the Civil Rights Act of 1991 and the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a and 42 USC 1983; 15 U.S. Code § 2087. I am seeking the following damages for each individual claim pursuant to the remedies found in Title VII of the Civil Rights Act of 1964 and as amended by the Civil Rights Act of 1991; the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a and 42 USC 1983; 15 U.S. Code § 2087 on the basis of race discrimination, harassment, hostile work environment, unequal treatment and being treated differently, desperate treatment, retaliation, wrongfully discharged, breached of the duty of fair representation, and unfair labor practices.

**11.)** I am asking for the following below to make me whole:

1.) Compensatory Damages:

a.) Future pecuniary losses/loss of future earnings: The difference between my monthly part-time wages of 1711.44 every month vs full-time librarian wages of 3,422.88 per month at 22.519 an hour. 1711.44 – 3,422.88 = 1,711.448 x 23 months = $39, 363.30

I would have gone on to apply for a full-time librarian position and I am suffering from the following injuries:

1.) professional standing,

2.) injury/harm to character and reputation,

3.) injury/harm to future jobs

4.) injury/harm to applying for certificates

5.) Not being able to apply/find comparable work.

6.) Loss of Experience

b.) Nonpecuniary losses (emotional harm):

I am still suffering:

- Emotional distress pain, $100,000.00

- Inconvenience,

- Mental anguish,

- Loss of enjoyment of life,

- sleeplessness, anxiety,

stress, depression, humiliation, loss of self-esteem, excessive fatigue, nervous breakdowns, headaches, shock, indignity, apprehension, isolation, grief etc...

2.) Back Pay with 5% Interest under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C. 2000e–5(g)]. Back pay for losses that I incur from the time that I was fired on March 17, 2022 – February 2024.

22.519 hourly rate x 38hrs = 855.722 x 2 = 1,711.44 monthly x 23 months = 39,363.30 – 722.10 (Less Paid After Terminating me) = 38,641.20 + 1,932.06 with 5% Interest = 40,573.26

- NYSR Contributions/Retirement/Pension: 29.95 x 23 = 688.85

- Social Security: 53.05 x 23 = 1,220.15

- 750.00 Bonus:

Back Pay Total: $ 43, 232.26

(B) In addition to any relief authorized by section 1977A of the Revised Statutes (42 U.S.C. 1981a), liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

3.) I am also seeking the following: Neutral Reference, File Expungement, not to oppose a claim of unemployment compensation by the appellant, Resignation with File Expungement, no Retaliation against me, and non-Disparagement statement for both sides.

4.) Any other relief and damages that are appropriate to my claims.



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Tampa Field Office**
501 East Polk St, Suite 1000
Tampa, FL 33602
(800) 669-4000
Website:

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

To: Ms. Tracey Y. Watson
14460 FALLS OF NEUSE RD Suite 149-105
RALEIGH, NY 27614

Charge No: 525-2022-01302

EEOC Representative and email:  CYNTHIA WOODRUFF
Investigator
cynthia.woodruff@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

*James S. Schweiberger*

Digitally signed by Tamra
Schweiberger
Date: 2023.11.16 08:20:34 -05'00'

Tamra Schweiberger
Director

Cc: Jeannine Doyle
Buffalo & Erie County Public Library
1 Lafayette Sq
Buffalo, NY 14203

Please retain this notice for your records.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

Olympic Tower
300 Pearl Street, Suite 450
Buffalo, NY  14202-2504
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Buffalo Direct Dial:  (716) 431-5007
FAX:  (716) 551-4387
Website:

Charging Party: Ms. Tracey Y. Watson

Respondent: BUFFALO & ERIE COUNTY PUBLIC LIBRARY

Charge No: 525-2022-01302

**NOTICE OF CHARGE TRANSFER**
**(Sent by EEOC Portal Only)**

Dear Parties:

The purpose of this letter is to inform you that the instant charge of employment discrimination filed with the EEOC has been transferred to our Tampa Field Office for processing due to workload redistribution, and another Equal Opportunity Investigator will be assigned to the case.

If you have any questions regarding the transferring of this charge, please contact:

Carlos Borges, CRTIU Supervisor

501 E. Polk Street, Room 1000
Tampa FL 33602

Please note that this transfer will not impact the parties' ability to check charge status (including assignment to an investigator), upload documents, or receive charge-related correspondence through the EEOC Portal. A Tampa office representative will be in contact once your case file has been carefully reviewed to ensure that your investigation continues without interruption. Thank you for your patience, understanding and cooperation with the EEOC!

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC  FEPA | 525-2022-01302 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

**Name** *(indicate Mr., Ms., Mrs.)*

| Ms. Tracey Y. Watson | Home Phone  716-536-8022 | Year of Birth  1972 |
|---|---|---|

**Street Address**

301 Baynes Street Apt 4

BUFFALO, NY 14213

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| **Name**  BUFFALO & ERIE COUNTY PUBLIC LIBRARY | No. Employees, Members  201 - 500 employees | Phone No.  716-858-8900 |
|---|---|---|

**Street Address**

1 LAFAYETTE SQ

BUFFALO, NY 14203

| **Name** | No. Employees, Members | Phone No. |
|---|---|---|

**Street Address**

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| Race, Retaliation, Harassment, Protected Activity, Breach of Duty of Fair Representation | Earliest  11/6/2021 | Latest  03/17/2022 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**This is an amended Charge. The initial Charge was timely filed on June 24, 2022.**

1.) I am a Black American. I have been a Professional Librarian for approximately 6 years. I was employed by the above-named employer, Respondent, Buffalo and Erie County Public Library, in the Children's Department. I accepted the Buffalo and Erie County Public Library position on October 7, 2021, and my start date was on November 6, 2021. I enrolled and became a member of the above-named Union, Respondent, New York State United Teachers Union, the local name: the Librarians' Association of the Buffalo and Erie County Public Library on February 4, 2022. During that time, I worked as a Part-Time Children's Services and Outreach Librarian I. On or about October 7, 2021, and up until March 17, 2022, the Respondent intentionally and illegally discriminated against me based on race, harassed me, created a hostile work environment, treated me unequal and treated me differently than white employees, desperate treatment, retaliated against me, and wrongfully terminated me, in violation of Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a, 42 USC 1983, 15 U.S. Code § 2087. On February 15, 2022, my direct supervisor, Kristi Dougherty, Manager of Children's Services and Outreach,

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| 8/8/2022  *Date*  ___Tracy Watson___  *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC  FEPA | 525-2022-01302 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

and the Recording Secretary for the New York State United Teachers Union, the local name: the Librarians' Association of the Buffalo and Erie County Public Library directed me to attend a Record of Counsel meeting on February 17, 2022, in the Human Resources Office where I was harassed, discriminated against because of my race, harassed and treated unequally and differently from white employees. On February 25, 2022, I met with Judy Fachko Assistant Deputy Director of Human Resources and verbally told her about how I was, illegally discriminated and harassed against because of my race, and treated differently and unequal. On March 14, 2022, I submitted a written grievance complaint of harassment and race discrimination to Jeannine M. Doyle, Interim Director of Buffalo & Erie County Public Library and Andrew Maines, President of the Librarians' Association of the Buffalo and Erie County Public Library President about how I was discriminated and harassed against because of my race and treated differently and unequal. On March 17, 2022, at 8:14 AM, I received an email from Jeannine Doyle, Interim Director stating, "Yes, I am in receipt of your grievance. Please accept this as noticed that your grievance is being denied, as counseling memorandum are not subject to the grievance process." Ms. Doyle refused to address my grievance complaint of harassment, race discrimination, being treated differently and unequal. The Union harassed, discriminated against me because of my race, and treated me differently and unequal and failed to advocate for me and subjected me to the future actions of the Buffalo and Erie County Public Library.

The Union worked with the employer in these illegal acts and practices against me. In retaliation, 21 days after submitting my grievance complaint of harassment, race discrimination, being treated differently and unequal to the Respondent, I was terminated by the Buffalo and Erie County Public Library. In addition, in retaliation, on March 17, 2022, at 8:14 AM, I received Ms. Doyle decision regarding my grievance complaint, and 4 hours later, I was terminated by the Buffalo and Erie County Public Library at 12:00 PM on March 17, 2022. I was also retaliated against by the Union for filing a grievance with the Buffalo and Erie County Public Library. On March 17, 2022, I was directed to attend a meeting by my direct supervisor, Kristi Dougherty, Manager of Children's Services and Outreach, Judy Fachko Assistant Deputy Director of Human Resources, and Andrew Maines, President of the Librarians' Association of the Buffalo and Erie County Public Library and I was terminated. All the persons above were aware of my grievance complaint of harassment, race discrimination, and being treated differently and unequal. On March 18, 2022, I filed for harassment, race discrimination, and retaliation complaint with the EEOC. I have been discriminated against by the Respondent on account of my race (Black), harassed, and retaliated against on account of having complained of discriminatory treatment, treated unequally and treated differently than white employees, wrongfully termination, and for opposing unlawful employment and union practices in violation of Title VII of the Civil Rights Act of 1964 the Civil Rights Act of 1991; the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a; 42 USC 1983; 15 U.S. Code § 2087.

2.) The Respondent, Buffalo & Erie County Public Library Public System is severely lacking in diversity among Professional Librarians, and I was the only Black librarian who worked for Respondent at that time. My direct Supervisor, Kristi Dougherty, Manager of Children's Services and Outreach is white, Erin M. Burke, Children's Librarian is white, Judith Slawinski, Children's Librarian, is white, Kelly Woods, Children's Librarian is white, Jennifer Lelinski, Children's Librarian is white, Lucylle K. Castaneda, Library Assistant is white, Andrew Maines, President of the Librarians' Association of the Buffalo and Erie County Public Library is white, Judy Fachko Assistant Deputy Director of Human Resources is white, and Jeannine Doyle, Interim Director is white. The Children's Department does not have a full-time black Librarian on staff. This discrimination is based on race and is part of a pattern of practice and black Librarians in the Children's Department are treated differently than white Librarians.

3.) Throughout my employment, the Buffalo and Erie County Public Library treated me differently and unequally than white employees/Children's Librarians for examples:

a. I was not given a sign-on bonus, while other white employees/Children's Librarians were given that bonus.

b. On January 10, 2022, 3 months after being hired by Respondent, I went to check out books for my Celebrate Black Inventors program and the woman at borrower services told me I was not in the system as an employee which impede my ability to do my job. The white Librarians were in the system as employees.

c. On January 10, 2022, 3 months after being hired by Respondent, I went to check out books for my Celebrate Black Inventors program and the woman at borrower services told me I did not have a staff profile in the library system, which also impeded my ability to do my job. The white Librarians had staff profiles in the system.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  **SIGNATURE OF COMPLAINANT** |
| 8/8/2022                    *Joy Watson*  *Date*                  Charging Party Signature | SUBSCRIBED  AND  SWORN  TO  BEFORE  ME  THIS  DATE  *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act<br>Statement and other information before completing this form. | Charge Presented To:<br><br>EEOC<br><br>FEPA | Agency(ies) Charge No(s):<br><br>525-2022-01302 |
|---|---|---|

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

d. The white Librarians efforts for their programming were published on time and accordingly, but my programming was not,

e. I asked the Respondent multiple times for the library collection development software training, but I was never trained. All the white librarians were trained and had access to the software system. I was not given access to the software system,

f. I and the other only black Senior Page, Nancy Smith, were always placed on the schedule at the Children's Reference desk during the highest patron volume times.

g. Although, I have made multiple requests to Respondent, I was denied access to the Children's Department Google account while all the other white librarians were given access to the account,

h. When I work a full 8 hours, Respondent told me that I don't get a 1-hour lunch break like the other white Librarians,

i. On December 15, 2022, I emailed my manager Kristi Dougherty and provided her with a proposal for my Celebrate Black Inventors program, which was scheduled for February 19, 2022. I provided her with a list of materials I would need, but she did not purchase those items. However, when white librarians made orders, they got exactly what they requested. As a result, I did not have the materials I needed for my event, and I needed to get them. When other white librarians make requests for their programming, they get exactly what they asked for. Judith Slawinski, Librarian I, white, told me she always gets what she orders and the exact materials that she orders. She said she orders her own materials too and if she does asks Mrs. Dougherty to order something for her; she gets what she requested. I was not given access to accounts or credit card information nor a privilege to order materials for programing like the white librarians. In the proposal, I also requested that Respondent provided me with adequate staffing for the event, but I was not provided with adequate staffing for my program. The white librarians get proper staffing for their programming,

j. On March 3, 2022, the Respondent installed additional telephones in the Children's Department area, because the phones were only on the Black employees' side, and we were told if the phone rang, we had to answer it. On the white librarian's side there weren't any phones; they did not have to answer the phone,

k. I was not granted the same privileges to work remotely like the other white Librarians in my department,

l. I asked the Respondent if I could be in attendance via Zoom for the online presentations of the finalist candidates for the Director position, and I was told no, but that I could tune in after I get off desk. After my desk shift, and as I went upstairs to the workroom, when I look around all the Blacks were on desk, even at the borrower's services counter, but when I went upstairs all the Whites were sitting viewing the interviews. The Respondent denied me and other Black employees the right to provide comments and feedback in relations to the candidates. I know this discriminatory act took place system wide. Dorinda Darden, Assistant Deputy Director – Public Services, Buffalonian, was the only black candidate, and she has worked for the Respondent for years and a white man out of Chicago, John Spears, received the job,

m. After discussing with Mrs. Dougherty on Thursday, February 17, 2022, during the Record of Counsel meeting how I was treated by Ms. Burke, Children's Librarian, white, Mrs. Dougherty directed Ms. Burke, without telling me, to oversee my Celebrate Black Inventors program on Saturday, February 19, 2022. On the day of the event, Ms. Burke came up to me and said Mrs. Dougherty direct her to oversee my event to make sure everything runs well and to assist me if I needed anything. Ms. Burke walked around like a white overseer my entire program.

n. I asked the Respondent multiple times for a part of the children's collection to develop and maintain, and the Respondent never did give me a section. The white librarians had collection development assignments. Mrs. Lelinski was just recently hired approximately a month and a half after me, and the Respondent assigned her a part of the collection to maintain. I wanted to do work in my profession as well like the white librarians, but I was denied. Maintaining, working with in the collection, its' a part of librarianship I was denied by the Respondent.

o. On December of 2022, the Respondent told Ms. Castaneda to go downstairs to harass me while I was on desk.

p. In March of 2022, All the white librarians worked together and collaborated to work on a school tour visit, but the Respondent did not include me,

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>8/8/2022<br>Date          *Jury Watson*<br>Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br><br>FEPA | 525-2022-01302 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

q. On March 14, 2022, 3 days before I was terminated, when I arrived at my desk in the morning at 9:00 AM, someone had placed a small empty box on my desk with a reference desk schedule. I emailed the Respondent at 9:14 AM asking who left the empty box and the schedule on my desk.

r. In retaliation, on March 17, 2022, at 8:14 AM, the Respondent denied and refused to address my grievance complaint of Race Discrimination, Harassment, Retaliation, and being treated differently and unequaly throughout my employment. 4 hours later, on March 17, 2022, I was terminated by the Respondent.

s. The white librarians programming was given recognition through Respondent public publication and my programming was not.

4.) On February 15, 2022, I received a directive from Mrs. Dougherty to attend a Record of Counsel meeting on Thursday, February 17, 2022, in the Human Resources Office with Lucylle Castaneda. She ordered me to attend this meeting approximately 1.5 days before my Celebrate Black Inventors program. Mrs. Dougherty stated that she wanted to discuss communication matters with both Lucylle Castaneda and me. She also stated the meeting was not a disciplinary meeting. She went on to state this is a counseling meeting to develop strategies. During the Record of Counsel meeting Mrs. Dougherty explicitly stated the reason she directed us to the meeting was because of an incident that allegedly happen on Monday, February 14, 2022, during a desk change at 5:06 PM between me and Ms. Castaneda. In the Record of Counsel meeting, Mrs. Dougherty discussed with me "for the first time" allegations of misconduct that she never orally or otherwise discussed with me prior to the meeting. During the meeting, Mrs. Dougherty told me that Lucylle Castaneda had made reports that I was intimidating her:

a. Mrs. Dougherty stated in the meeting, "So on Monday February 14th there was a desk change from 5 to 6 pm. Lyculle was a few minutes late for the desk shift because she needed to use the bathroom. It was reported to me that Tracey asked Lucylle if she knew what time it was, and Lucylle answered she didn't know. Tracey asked Lucylle if she could come early because it was 5:05 and she clocked out at 5:00." As I explained to Mrs. Dougherty; since I started on November 6, 2021, approximately 3 months ago, I can count on one hand how many times Ms. Castandea and I have even talked/communicated. The majority of those times were me saying good morning and Ms. Castandea not even acknowledging my presence and saying absolutely nothing in return. I stated I do not have a communication issue with any of my co-workers. As I explained to Mrs. Dougherty during the Record of Counsel meeting, the only three interactions I have had with Ms. Castaneda is when she came to my desk in the workroom and showed me a picture of her cat; when I came downstairs to ask her in front of Nancy Rypinski and Sumia Akter, Pages, if there was any more black card stock paper for lettering for my Celebrate Black Inventors program exhibits, and the third time I interacted with Ms. Castaneda was on the day of the alleged incident that took place on Monday, February 14, 2022, at 5:06. It was apparent in the meeting Mrs. Dougherty spoke with Ms. Castaneda about what she believed happened, but Mrs. Dougherty never spoke to me about the alleged incident before the meeting. During the meeting, it was evident that Mrs. Dougherty believed whatever Ms. Castaneda told her I did.

b. Next, Ms. Castaneda reported to Mrs. Dougherty that I allegedly knocked on the workroom door aggressively. Ms. Castaneda then stated during the meeting, "Why do I think about the day... you I had on the workroom you then you go knock knock knock like this," (Ms. Castaneda banged on the table several times) ... It made me jump in my seat. I then said to Ms. Castaneda, "Say that again I'm confused say that again." Ms. Castaneda goes on to state, "One day I don't remember the month ..." then Mrs. Dougherty rudely cuts Ms. Castaneda off from talking and stated, "I have the day right here because you did bring this to my attention because its not something I perceived. On Saturday, December 11th there was a situation that Lucille brought to my attention from the 1 to 2 pm desk shift via email. Lucille arrived for her shift at 12: 56 pm and didn't let Tracey know she was there for the desk shift. she was in the workroom. Tracey knocked repeatedly on the door rather than going into the workroom. This was perceived by Lucille as an aggressive act and made her nervous for the rest of the day. This incident nothing like this was ever repeated. I told Lucylle let your colleagues know when your there for a shift." Ms. Castaneda then said "No." Mrs. Dougherty went on and she did not allow Ms. Castaneda to speak stating, "And I did also explain that Tracey was still learning desk shift transitions at that point her 1st library date was Nov 8 so part time you only been on desk like a handful of times, and she could leave her desk when they arrive however I do know that the incident did bother you." I then stated, "Why would I go and knock on the door; I've never done that to you that's a lie."

In the meeting, I asked Ms. Castaneda, "Are you in fear of me Lucylle.? Ms. Dougherty then stated, "You can be honest." Ms. Castaneda states, "Yea because since the beginning I told Kristi about the incident with the door or whatever." Ms. Castaneda went on to state, "Look at me, look at me right now if I can't... if I am upset." Ms. Castaneda began to shake. Ms. Dougherty looks at me and stated, "I wanted you to see that." Mrs. Dougherty want me to see Ms. Castaneda shaking. I could not believe what I was hearing and seeing from both Mrs. Dougherty and Ms. Castaneda.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

8/8/2022

*Date*     *Charging Party Signature*

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC  FEPA | 525-2022-01302 |

| New York State Division Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

because I haven't done anything to Ms. Castaneda or any other staff member. While Ms. Castaneda went on shaking, I stated I met a Caucasian father, you remember this, I said with his two young sons tell me... then Ms. Castaneda cut me off from speaking and in her true voice not her passive voice she had been using during the meeting said, "What, Say that again; say that again?" ... I continued stating, "You were very nasty to him and rude you even said the Fuck word in front of him and his children and he said he even reported to you. "You" I pointed to Ms. Dougherty. Mrs. Dougherty then uncontrollably blurted out, "That issue has already been dealt with." The father told me that Ms. Castaneda was downright cocky – negative body language, tone, and all, nasty, rude, and intimidating to him and his young boys. He said she said the work "Fuck" in front of him and his young children. He told me he reported what happened to Mrs. Dougherty and I'm sure since she has been keeping a bogus record on me; she should surely have the man's complaint and contact information about what Ms. Castaneda said and did to him and his young children (boys) at the reference desk in the children's area of the library. Why didn't the Buffalo and Erie County Public Library terminate Ms. Castaneda immediately after the father's complaint? Why, because she is white.

Mrs. Dougherty then goes on to state, "It's doesn't necessarily have to be verbal transaction body language .. just; how your looking at someone." First the issue was with what I said verbally and now it's my body language and how I'm looking at others.

Mrs. Dougherty went on about how she wanted to help me with mindfulness stating, "I want to work with you on your body language your tone, I want you to be more mindful." Mrs. Dougherty used the word "tone and body language" towards me during the meeting about a million times. I said to Mrs. Dougherty, "Yea I'm the angry black woman huh?" I told Respondent in the meeting that I was being discriminated against and being characterized as an angry black woman. There I was, in a Record of Counsel meeting having to listen to the Respondent describing Ms. Castaneda as this easily frightened, delicate, shy person that needs to be taught how to stand up for herself vs me the angry black woman who needs to be taught how to not be aggressive, angry, intimidating, hostile, ill tempered, bitter, loud, or too straight forward etc... While in the Record of Counsel meeting, the Respondent humiliated and embarrassed me in front of my coworkers (Lucylle Castaneda, Library Assistant (W) and Jennifer Lelinski, Children's Librarian I, Union Representative in the meeting (W)

c. Ms. Castaneda then said there was another incident that happened between she and I, and she stated in the Record of Counsel meeting, "And another day I went downstairs, and I told you I am here for my shift because Kristi told me to do it." "KRISTI TOLD ME TO DO IT," In reflecting on what Ms. Castaneda said, I remember her doing this. I said nothing in response. I was confused and it made me feel awkward, but I thought to myself why is she telling me this. I just look at Ms. Castandea very confused by her behavior and walked away from the desk. What else has Mrs. Dougherty told/directed Ms. Castaneda and/or other staff members to say or do to me?

Mrs. Dougherty also violated the Rule 5 set out in the Buffalo and Erie County Public Library

Employee Handbook 2021 Edition section on Removal and Other Disciplinary Actions. On page

9, section Group A (Violations may result in immediate discharge), it states in rule 5, "Threatening, intimidating, or coercing any fellow employee or member of the public in any manner, including violations of the B&ECPL's Workplace Violence Policy."

Moreover, according to the Buffalo and Erie County Public Library Personnel Policies and

Procedures Manual Chapter 8 Equal Employment Opportunity and Anti-Harassment Section 1(B) Unlawful Harassment states, "The B&ECPL will not tolerate unlawful harassment of its employees by any supervisor, coworker, volunteer, patron, or any other person with whom employees may come into contact during work. Similarly, the B&ECPL will not tolerate its employees engaging in unlawful harassment of co-workers or of non employees with whom they come into contact during work, including but not limited to job applicants, vendors, contractors, patrons and volunteers."

d. After discussing what we were directed to attend the Record of Counseling for, strategies on how to communication the way Mrs. Dougherty directs us to, Mrs. Dougherty then goes on to state in the meeting, "All right, the next thing I'm going to have you do. There are papers in front of you that I want you to turn over because there are other issues that need to be addressed as well. One will be a copy for you. One will be a copy for human resources. There are wording that are used that is based on various policies there may be some words on there that may be upsetting so I just want you to take a few moments and read through it because there some other issues you want to address." On the Record of Counseling form, Mrs. Dougherty writes under the Conduct section: Tone of Voice, Body Language, Noise Level has intimidated Staff – Specifically during reference desk transitions and in workroom interactions, utilizing cell phone and loud personal dialogue disrupts work of colleagues in workroom. On the Record

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| 8/8/2022                    ~Tiny Watson~  Date                       *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br>FEPA | 525-2022-01302 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

of Counseling form, she goes on to write under the Applicable Policy, Rule or Regulation section: Discourteous treatment of co-workers/interfering with employee work routine and Employees should leave their cell phone in their locker, silenced, or turned off during work hours. Personal cell phones may be used during break and lunch periods. Such use must not disrupt the work area.

I asked Mrs. Dougherty besides Ms. Castaneda, who lodged the complaint that triggered her to counsel me on communication strategies? Mrs. Dougherty responded, "That I am keeping anonymous because the people that came to me they were afraid of they were afraid they were intimidated and they ask that I specifically who the names of those people were I have them were I can share them with human resources specific reports, dates and time unfortunately they were intimidating is the word I would use unfortunately." So, I asked Mrs. Dougherty, so I have allegations alleged against me and I don't have a right to know who these people are and what they have said? Mrs. Dougherty responded, "It's not necessarily an allegation; it is people have come to me and this record of counseling this is basically the first step this is the first step this is an issue that is happening, I want you to see that how you're communicating is having an effect on other staff members." Mrs. Dougherty's above statements are not written on the Record of Counsel document. According to the Buffalo and Erie County Public Library Personnel Policies and Procedures Manual Chapter 3 Progressive Discipline – Union Employees Section 7 (II)(C)(1) states, "1. All warning notices, disciplinary actions, etc. should be documented in detail. A copy must be presented to the employee ...." In this meeting, I was informed that others have complaints about me, but I was not given who, what, when, where, why and how. I still do not know who these alleged people are and what they said I did for them to be in fear of me. During the meeting, Mrs. Dougherty said she spoke with these alleged people who gave her complaints about me. Again, Mrs. Dougherty never asked/questioned me about any of these alleged incidents to obtain information from me nor allowed me to defend myself regarding the misconduct that she, Ms. Castaneda, and the alleged others have accused me of. My due process rights have been grossly and illegally violated. Ms. Dougherty bogus Record of Counsel can be used against me for the basis of future discipline or termination, so I wrote and invoke a written grievance complaint of harassment and race discrimination. While in the Record of Counsel meeting, Mrs. Dougherty humiliated and embarrassed me in front of my coworkers (Lucylle Castaneda, Library Assistant (W) and Jennifer Lelinski, Children's Librarian I, Union Representative in the meeting (W). Just as I heard about the 5:06 PM incident above in the meeting for the first time, I was hearing about all the other alleged misconduct for the first time in front of my coworkers.

e. I would like to point out, Mrs. Dougherty made the directive to meet at Human Resources on the last day of my work week (Thursday February 17, 2022, at 10:30 AM) and 1.5 days before my Celebrate Black Inventors program on Saturday, February 19, 2022, at 2:00 PM.

Instead of me focusing on my upcoming program: finalizing audio, set up etc…like the white librarian are allowed to do, I found myself so disturbed, and ill from the meeting. So ill and disturbed physically, mentally, and emotionally that I needed to go home. Mrs. Dougherty stated Ms. Castaneda told her about the alleged knock, knock, knock on the door incident on December 11, 2021, approximately 3 months before the Record of Counsel meeting and I am hearing about it in the Record of Counseling meeting on February 17, 2022, 1.5 days before my Celebrate Black Inventors program. Ms. Dougherty purposefully chose to give me a Record of Counseling less than 1.5 days from my program event that I had worked on for months. She interfered and sabotaged my ability to finish completing my work for my program while I was on the job.

Moreover, according to the Buffalo and Erie County Public Library Employee Handbook 2021 Edition Section on Removal and Other Disciplinary Actions Group A (Violations may result in immediate discharge) sections 9 states on pages 9-10, "9. Deliberate restriction or interference with the work performed by your department or work unit or that performed by another person."

f. Directly after the Record of Counsel meeting and while I was talking with Sandra Courtney, Small Business Librarian, in the upstairs workroom, the phone rang in the Children's workroom area. Ms. Castaneda answered the phone and she told me that Mrs. Lelinski wanted to speak with me. Ms. Castaneda told me 3 times to come around to her desk to take the call. I told Ms. Castaneda I would not be coming around to her desk and then she said just take the phone from my hand over the cubicle wall. She had the phone in her hand dangling it across the cubicle over my desk. I told her I did not want to take it from her hand. I was in fear that she would falsely accuse me of touching or hitting her hand. I then asked her to please tell Mrs. Lelinski to call again and I will pick up the phone from my side of the cubicle. If Ms. Castaneda was so afraid and intimidated by me, why would she ask me to come over to her desk to take the call. Ms. Lelinski was on the phone and Mrs. Courtney and others heard Ms. Castaneda ask me to come to her desk to take the call. After asking for permission to leave work and getting approval to leave for the day at 12:00 PM due to being so disturbed and ill by the meeting, before leaving, I went downstairs to speak with Mrs. Lelinski about Ms. Castaneda asking me to come over to

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 8/8/2022      *Leay Watson*<br>Date           *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC    FEPA | 525-2022-01302 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

her desk area to get the phone. Mrs. Lelinski heard Ms. Castaneda while waiting on the phone to speak with me. Mrs. Lelinski, Union Representative, Respondent, was in the Record of Counsel meeting while Mrs. Castaneda started shaking while professing to be scared and frightened of me.

5.) On February 15, 2022, I also asked the Buffalo and Erie County Public Library for union representation for the Human Resources Record of Counseling meeting on February 17, 2022. As stated above, Mrs. Dougherty is a Union member, and she is the Recording Secretary for the Union. The Buffalo and Erie County Public Library told me union representation would be provided. As Mrs. Dougherty states in her email to me dated February 16, 2022, "City Libraries Representative Jennifer Lelinski will be sitting in during the meeting to ensure that your rights, as laid out in the Librarians Association contract, are not violated..." As to union representation in this matter, I was asked by Ms. Fachko, during our Friday, February 25, 2022, meeting, if I asked for Mrs. Lelinski to represent me during the Counsel of Record meeting on February 17, 2022. I told her no. Ms. Fachko also told me that it would be useless to file a grievance. She said nothing would come of it. I found it highly unethical since Mrs. Lelinski was newly hired and a colleague "an equal" in the Children's Department to be representing me. I never asked for her to represent me during the Counsel of Record meeting. The Union did not say a word during the entire meeting. I look to the Union to represent me, but it said nothing to defend my interest or rights. Just as in the Record of Counsel meeting, the Union said nothing to help or defend me in the termination meeting. I do recall Mr. Maines stating in the work room that he had been working with Human Resources all day. The Union failed to advocate for me and subjected me to the future actions of the Buffalo and Erie County Public Library, retaliation and termination me from its membership as well. The Buffalo and Erie County Library and the New York State United Teachers Union, the local name: the Librarians' Association of the Buffalo and Erie County Public Library colluded in harassing, discriminating, retaliating, and wrongfully terminating me. The Union did nothing to represent me and its nonaction is contrary to its collective bargaining agreement.

6.) According to the Unions contract "Agreement" between The Buffalo and Erie County Public Library and the Librarians' Association of the Buffalo and Erie County Public for the years 2021, 2022, 2023, 2024, it states in under Article 6 – Grievances sections 6.1.5 Representation states, "The Library shall furnish to the Association a list of its representatives for each level of the grievance procedure. The Deputy Director or designee at Level 1 normally will be the Deputy Director or designee responsible for the Branch Library or Central Library department from which the grievance originates ... The Association shall furnish, to the library, a list of its representatives for each level of the grievance procedure."

According to the Contract Agreement section 6.4 Disciplinary Proceedings 6.4.1 General states. "... Whenever feasible, the Board, Contract Library Director, Administrator, or designee, as appropriate, shall follow a policy of progressive discipline." It goes on to state in section 6.4.2 Notice of Discipline. "If a representative of the Board, Library Director, Contract Library Director, Administrator, or designee, as appropriate, seeks to discipline or discharge a full-time, regular part-time, or part-time Librarian or Librarian Trainee, a written Notice of Discipline shall first be personally served upon the Librarian and the president of the Association; if personal service is not reasonably possible, service can be made by certified mail-return receipt requested. The Notice of Discipline shall contain the penalty being imposed and the reasons for the discipline, including a detailed description of the alleged acts and/or conduct complained of with dates, times, and places."

The policy of Progressive discipline was not followed, and I never received a Notice of Discipline; instead, I received a termination letter in a HR meeting room and was escorted out of the building by security. The Union said nothing on my behalf. I and the President of the Union, Andrew Maines works in the Central Library location where the Human Resources department is located.

On March 14, 2022, I submitted my written grievance on the (Appendix E) form within the time limits of the contract to Jeannine M. Doyle, Interim Director of Buffalo & Erie County Public Library and Andrew Maines, President of the Librarians' Association of the Buffalo and Erie County Public Library. As stated in section 6.2.2 of the Contract, I requested, in my grievance complaint, an informal hearing. According to the Contract Agreement, the Library Director should have held an informal hearing within ten (10) consecutive working days after the submission of my written grievance complaint; instead, I was terminated 3 days later. The Library Director never render a decision in writing within ten (10) consecutive days of my grievance nor did the Union say anything about the library not following its legal Contract Agreement with the library. I heard nothing from the Union because I was terminated and even during the termination meeting the Union said nothing on my behalf. As shown above, the Buffalo and Erie County Public Library and the Union violated the collective bargaining agreement, and the Union breached its duty of fair representation by allowing the breach to go unchecked/not corrected.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.    8/8/2022    _Ivy Watson_    Date    Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT    SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE  (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br>FEPA | 525-2022-01302 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

I was terminated on March 17, 2022, at about 12:00 PM and on the same day of my termination, on March 17, 2022, at 1:29 PM, John Gaff, Communications Officer for Librarians' Association of the Buffalo and Erie County Public, emailed members stating, "Greetings everyone! I just wanted to remind you that the Librarians Association is hosting a General Membership Meeting tomorrow, March 18th, at 8:00 PM via Zoom…"

On March 17, 2022, at 3:55PM, I emailed Mr. Gaff stating, "Hello John, I was wrongfully fired today; I would like to be present at the Zoom meeting. Tracey Watson."

On March 18, 2022, Mr. Gaff responded to my emailed stating, "Hello Tracey, In accordance with New York State law, when hired for a permanent position there is a probationary period. During the probationary period, an employee can be removed from service without cause. As you are no longer employed by the Buffalo & Erie County Public Library, you are no longer a member of the Librarians Association and therefore you are ineligible to attend member meetings. I wish you well, John." I found out my Union membership was terminated by the Union on March 18, 2022.

On March 21, 2022, I replied stating, "Hello and Good morning Mr. Gaff, My union dues were deducted out of my paycheck for this month. It is my understanding that the Union is separate from the employer. Thank you Sincerely, Tracey Watson."

The union did not follow its own Agreement, nor did it represent/advocate for me against the library according to its Agreement. The Union breached its duty of fair representation which denied me my Contractual and human rights. As a member, I was denied fair union representation and it did not advocate for me during any of the procedures or processes, and it colluded and subjected me to retaliation, termination, and a hostile work environment because of my race, in violation of Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a; 42 USC 1983; 15 U.S. Code § 2087. Because of the above illegal actions and practices taken by the Respondent in violation of Title VII of the Civil Rights Act of 1964 and as amended by the Civil Rights Act of 1991 and the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a; 42 USC 1983; 15 U.S. Code § 2087. The Union also retaliated against me. My grievance was intentionally not managed, and the Union deprived me of employment opportunities, and it adversely affected my status as an employee based on a discriminatory reason, my race.

7.) In the second meeting, on February 25, 2022, I met with Judy Fachko Assistant Deputy Director of Human Resources to discuss the Record of Counsel meeting and how I was treated. I described to Respondent, how I was harassed and being discriminated against because of my race. While I was waiting for my meeting with Respondent, I heard Ms. Fachko say to whomever she was speaking to over the phone, she is in my waiting room, scary wait. I was the only person in the entire area.

In the meeting, I explained what happened with Ms. Castaneda and I shared that Mrs. Dougherty did not provide me with the opportunity to defend myself against alleged allegations from other alleged workers. I said Mrs. Dougherty told me she couldn't disclose the name, place, time of what I'm being accused of by these other people. Ms. Fachko responded, "I can tell you we wouldn't … if someone came and said those things to me… I wouldn't say…people do do that … come and say… and I would say… I don't say so and so said this about you. I'd say it has been reported to me that these things occurred these things happen." I then said, "I didn't get that… I didn't even get what they reported" Ms. Fachko then replied, "If someone said I want to know who said I wouldn't reveal that either." I then said "Ok." Ms. Fachko then stated, "Just because of confidentiality and privacy if you came and told me I had to speak to someone I wouldn't say Tracey told me this. I would say someone told me this and I need to speak to you about it and if they said I want to know who said it well that's not what we're talking about were talking about your behavior your question whatever so… I can say I wouldn't either." I responded, "These people who ever she's talking about she lumped them all in one group. She never specific gave me incidents she might not have to say the persons name, but at least given me the incidents that your referring to …" Ms. Fachko goes on to state, "Ok, I assume it's just who works in the work room." I then state, "I think I deserve if you're going to if people are going to throw allegations at least give me the incident or the time or the date whatever so I can rebut that or tell you my side of the story." I then told Ms. Fachko I would be submitting a grievance complaint of what has happened to me. Ms. Fachko went on to state, "If Andrew brings a grievance forward our response would be a grievance cannot be filed because a counseling is not discipline… It's not part of the progressive discipline steps. It's just a conversation and we do tell managers when you do have conversations record them on counseling."

8.) In the third meeting, on March 17, 2022, at approximately 12:10 PM, I was retaliated against and terminated by the Buffalo and Erie County Public Library and the New York State United Teachers Union, the local name: the Librarians' Association of the Buffalo and Erie County Public Library. In the meeting was Judy Fachko, Assistant Deputy Director – Human Resources, Andrew Maines, President, and Kristi Dougherty, Manager

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 8/8/2022     *Tracy Watson*<br>Date            *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br><br>FEPA | 525-2022-01302 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

of Children's Services and Outreach. The Buffalo and Erie County Public Library terminated me from my position for totally different alleged reasons, in part, for alleged failure to maintain reasonable productivity, repeated instructions on electronic schedule access and desk transition procedures, performing personal business during B&ECPL working hours, performing unapproved work business and outreach during personal hours. The above additional alleged reasons for terminating me were not discussed with me either. I heard about the alleged reasons for terminating me for the first time when I was terminated on March 17, 2022, which is also contrary to the Union's Contract Agreement.

9.) Because of the above illegal actions and practices taken by the Respondent in violation of Title VII of the Civil Rights Act of 1964 and as amended by the Civil Rights Act of 1991 and the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a; 42 USC 1983; 15 U.S. Code § 2087. I am suffering from the following injuries/harms: emotional distress, hopelessness, pain, inconvenience, mental anguish, loss of enjoyment of life, sleeplessness, anxiety, loss of appetite, stress, depression, humiliation, loss of self-esteem, excessive fatigue, nervous breakdowns, crying out of nowhere, headaches, shock, indignity, apprehension, isolation, grief etc... professional standing, injury/harm to character and reputation, injury/harm to future jobs, injury/harm to applying for certificates, not being able to apply/find comparable work, loss of experience etc. I have loss income and I would have gone on to apply for a full-time librarian position.

10.) The Respondent has intentionally and illegally discriminated against me based on race, harassed me, created a hostile work environment, treated me unequal and treated me differently than white employees, desperate treatment, retaliated against me, wrongfully terminated me, breached of the duty of fair representation, and unfair labor practices in violation of Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a; 42 USC 1983; 15 U.S. Code § 2087. Because of the above illegal actions and practices taken by the Respondent in violation of Title VII of the Civil Rights Act of 1964 and as amended by the Civil Rights Act of 1991 and the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a and 42 USC 1983; 15 U.S. Code § 2087. I am seeking the following damages for each individual claim pursuant to the remedies found in Title VII of the Civil Rights Act of 1964 and as amended by the Civil Rights Act of 1991; the Civil Rights Act of 1866, Section 1981, 42 USC 1981, 42 USC 1981a and 42 USC 1983; 15 U.S. Code § 2087 on the basis of race discrimination, harassment, hostile work environment, unequal treatment and being treated differently, desperate treatment, retaliation, wrongfully discharged, breached of the duty of fair representation, and unfair labor practices.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 2/8/2022     *Trey Watson*<br>Date                        *Charging Party Signature* | SUBSCRIBED   AND   SWORN   TO   BEFORE   ME   THIS   DATE<br>*(month, day, year)* |

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

24CV139-

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Watson, Tracey

## DEFENDANTS

1. Buffalo & Erie County Public Library
Doyle, Jeannine, Deputy Director - Chief Operating officer.
2) New York State Education Department - office of counsel

**(b)** County of Residence of First Listed Plaintiff __Wake__
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant __Erie__
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☒ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☒ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☒ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of Civil Rights Act of 1964; Civil Rights Act of 1991; Civil Rights Act of 1866 Sec. 1981
42 USC 1981; 42 USC 1981a; 42 USC 1983; 42 USC 2000e-2(c)(1)(2)(3) 42 USC 2000e-3

Brief description of cause: Race Discrimination, Retaliation, Harassment; Protected Activity; Breach of Contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE 02/12/2024

SIGNATURE OF ATTORNEY OF RECORD
Tracy Watson

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____