UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TRACEY WATSON,

Plaintiff,

v.

BUFFALO & ERIE COUNTY PUBLIC LIBRARY, and
BOARD OF TRUSTEES OF THE BUFFALO AND
ERIE COUNTY PUBLIC LIBRARY,

Defendants.

---

**REPORT**
**and**
**RECOMMENDATION**
-----------------------------
**DECISION**
**and**
**ORDER**

**24-CV-139-JLS(F)**

APPEARANCES:

TRACEY WATSON, *Pro se*
14460 Falls of Neuse Road
Suite 149-105
Raleigh, North Carolina 27614

BOND, SCHOENECK & KING, PLLC
Attorneys for Defendants
ALISON ROACH,
EDWARD W. KELLY, and
MICHAEL E. HICKEY, of Counsel
Avant Building
200 Delaware Avenue
Suite 900
Buffalo, New York 14202

## JURISDICTION

This case was referred to the undersigned by Honorable John L. Sinatra, Jr. on April 4, 2024, for all pretrial matters. (Dkt. 11). The matter is presently before the court on multiple motions filed by Plaintiff including a motion seeking an extension of time to complete discovery (Dkt. 53), filed June 3, 2025, a motion for discovery (Dkt. 54), filed June 3, 2025, a motion to compel and for sanctions (Dkt. 62), filed July 7, 2025, a motion for leave to modify the scheduling order (Dkt. 63), filed July 7, 2025, a motion to amend a motion to file an amended complaint (Dkt. 64), filed July 8, 2025, two

motions for leave to proceed *in forma pauperis* (Dkts. 69 and 70), both filed August 21, 2025, a motion to compel discovery (Dkt. 72), filed August 26, 2025, a motion to amend the scheduling order (Dkt. 73), filed August 26, 2025, a motion to expedite Rule 26(a) initial disclosures (Dkt. 75), filed August 26, 2025, and a motion for a protective order under Rule 26(c) (Dkt. 79), filed September 25, 2025.[1]

## BACKGROUND

On February 12, 2024, Plaintiff Tracey Watson ("Plaintiff"), then proceeding *pro se*, commenced this race-based employment discrimination action asserting claims against Defendant Buffalo & Erie County Public Library, and New York State Department of Education (together, "Original Defendants"), for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et al*. ("Title VII"). Plaintiff also filed on February 12, 2024 an application for appointment of counsel, Dkt. 2, which was granted on March 12, 2024, for the limited purpose of preparing an amended complaint. Dkt. 7. Original Defendants filed an answer on April 3, 2024 (Dkt. 10).

On April 15, 2024, E. Peter Pfaff, Esq. ("Mr. Pfaff"), was appointed to represent Plaintiff. Dkt. 12. In a letter to the undersigned dated May 2, 2024 (Dkt. 15), Plaintiff conveyed her concerns that Mr. Pfaff did not have sufficient experience with

[1] The undersigned's recommendation that portions of Plaintiff's Supplemental Motion to Amend (Dkt. 64), should be denied as futile is dispositive. *Taft v. Whitney*, 2025 WL 1626307, at * 4 (W.D.N.Y. Feb. 21, 2025) (observing that Second Circuit Court of Appeals has never definitively ruled on whether the denial of a motion to file an amended complaint is dispositive but citing cases demonstrating that district courts within the Second Circuit tend to conclude the denial of a motion to amend is non-dispositive when based on undue delay or prejudice, but dispositive when based on futility which is considered akin to granting a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)), *report and recommendation adopted by* 2025 WL 1540650 (W.D.N.Y. May 30, 2025). Accordingly, the undersigned treats the motion seeking leave to file a further amended complaint as dispositive insofar as denial of the motion as futile is recommended and all the motions are addressed in this combined Report and Recommendation and Decision and Order.

employment discrimination lawsuits and requested the court appoint an attorney who specializes in employment discrimination to represent her in this action or, alternatively, grant Plaintiff 60 days in which to prepare an amended complaint. On May 10, 2024, Mr. Pfaff moved to withdraw as Plaintiff's counsel (Dkt. 16), which, on August 8, 2024, was granted by the undersigned, (Dkt. 18), with the undersigned's stated intention to appoint new *pro bono* counsel for Plaintiff. By letter dated September 26, 2024 (Dkt. 22), however, Plaintiff advised the undersigned that she had obtained employment for which the pay exceeded the eligibility threshold for appointment of *pro bono* counsel, and requested an extension of time in which to file, *pro se*, an amended complaint ("first motion to amend").

On October 15, 2024, the undersigned granted Plaintiff's first motion to amend, setting November 25, 2024 as the deadline for Plaintiff to file a proposed amended complaint. Dkt. 23. Accordingly, on November 25, 2024, Plaintiff filed an amended complaint (Dkt. 25) ("First Amended Complaint" or "FAC"), adding as a defendant the Board of Trustees of the Buffalo and Erie County Public Library ("the Board") and claims against the Library and the Board ("Defendants") pursuant to 42 U.S.C. §§ 1981 and 1983 based on alleged violations of Plaintiff's Fourteenth Amendment rights to due process and equal protection.[2] To date, the FAC remains Plaintiff's operative pleading.

On February 13, 2025, Plaintiff filed Plaintiff's Motion to [File][3] Amended and Supplemented Complaint and Join Additional Parties to Complaint (Dkt. 38), seeking to file a second amended complaint ("SAC") adding defendants ("Initial Motion to Amend"),

[2] New York State Education Department, which Plaintiff named as a Defendant in the original Complaint but not in the FAC, was terminated as a Defendant on November 25. 2024.

[3] Unless otherwise indicated, bracketed material has been added.

supported by the attached proposed Plaintiff's Amended and Supplemented [*sic*] Complaint ("SAC") (Dkt. 38 at 6-52) ("Initial Proposed SAC"). On February 27, 2025, Defendants filed Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Amend and Supplement and Join Additional Parties (Dkt. 39) ("Defendants' Response to Initial Motion to Amend").

On June 3, 2025, Plaintiff filed Plaintiff['s] Motion for Extension of Time to Complete Rule 26 Initial Disclosures and Rule 34 Discovery Requests (Dkt. 53) ("Motion to Extend Deadlines"), attaching exhibits, and also filed Plaintiff['s] Motion for Expedited Review of Audio Recording to Admit into Evidence for Mediaition [*sic*] Confernece [*sic*] and Trial (Dkt. 54) ("Motion to Admit Evidence"), attaching exhibits. On June 17, 2025 (Dkt. 58), Defendants filed Defendants' Response to Plaintiff's Motion to Admit Evidence and Motion to Extend Deadlines (Dkt. 58) ("Defendants' Response to Extension and Admission of Evidence"). On June 23, 2025, Plaintiff filed Plaintiff['s] Reply to Defendants['] Response to Motions for Expedited Review of Audio Recordings to Admit into Evidence and for Extension of Time to Complete Rule 26 Initial Disclosures and Rule 34 Discovery Request[s] and Request for Pre-Mediation Clarification" (Dkt. 59) ("Plaintiff's Reply Re: Motions to Admit and Extend").

On July 7, 2025, Plaintiff filed Plaintiff['s] Notice of Motion to Compel with Sanctions (Dkt. 62) ("Motion to Compel"), attaching two volumes of exhibits (Dkts. 62-2 and 62-3). Also on July 7, 2025, Plaintiff filed a Notice of Motion for Leave to Modify Scheduling Order to Extend Deadlines to Add Defendnats [*sic*] and to Serve and Receive Rule 26 and Rule 34 Discovery (Dkt. 63) ("Motion to Modify Scheduling Order"), attaching exhibits (Dkts. 63-1 through 63-3). On July 8, 2025, Plaintiff filed a

Notice of Motion for Leave to File Amend[ed] and Supplemment [*sic*] Complaint to Add Defendnats [*sic*] and Cure Procedural Deficiencies (Dkt. 64) ("Supplemental Motion to Amend"), attaching Plaintiff's proposed second amended complaint ("Supplemental Proposed SAC") (Dkt. 64 at 17-127), and exhibits A through C (Dkt. 64-1). On August 8, 2025, Defendants filed a document titled "Opposition" (Dkt. 67) ("Defendants' First Opposition"), by which Defendants oppose Plaintiff's Motion to Compel, Motion to Modify Scheduling Order, and Supplemental Motion to Amend. On August 15, 2025, Plaintiff filed Plaintiff['s] Reply in Support of Motion to Compel with Sanctions, Motion for Leave to Modify Scheduling Order and Motion for Leave to File Amended and Supplemented Complaint to Add Defendnasts [*sic*] and Cure Procedural Deficiencies (Dkt. 68) ("Plaintiff's Reply").

On August 21, 2025, Plaintiff filed a Motion to Proceed *In Forma Pauperis* and Supporting Affirmation (Dkt. 69) ("Motion for IFP Status"), attaching an exhibit. That same day, Plaintiff also filed a document titled Notice of Motion to Proceed *In Forma Pauperis* and Request for Service Accommodation (Dkt. 70), which reads as a declaration in support of the Motion for IFP Status rather than as a separate motion ("IFP Supporting Document"), and exhibits (Dkt. 71).

On August 26, 2025, Plaintiff filed a Notice of Motion to Compel Valid Insurance Disclosure, Document Production, and Sanctions Under Rules 26, 34, and 37 (Dkt. 72) ("Motion to Compel Initial Disclosures"), and Plaintiff['s] Notice of Motion to Correct Caption and Confirm Joinder and Service of Defendant Board of Trustees Pursuant to Local Rule 7(a), Fed.R.Civ.P. 15(a)(2), and 4(m) (Dkt. 73) ("Motion to Correct the Caption"), attaching exhibits A through F (Dkts. 73-1 through 73-3). On September 2,

2025, Plaintiff filed a motion seeking leave to reopen Rule 26(a) initial disclosures and to serve initial disclosures with a damages computation (Dkt. 75) ("Motion to Reopen Initial Disclosures"). On September 5, 2025, Defendants filed a document titled "Opposition" (Dkt. 76) ("Defendants' Second Opposition"), by which Defendants oppose Plaintiff's Motions to Compel Initial Disclosures, to Correct the Caption, and to Reopen Initial Disclosures.

On September 25, 2025, Plaintiff filed the Emergency Motion for Protective Order Under Rule 26(c) and Affidavit of Tracey Watson with Certificate of Compliance to Confer (Dkt. 79) ("Motion for Protective Order"), attaching the Affidavit of Tracey Watson with Certificate of Compliance to Confer in Support of Emergency Motion for Protective Order Under Rule 26(c) ("Watson Affidavit").

By Text Order entered September 29, 2025 (Dkt. 82), the undersigned dismissed as moot Plaintiff's Initial Motion to Amend in light of Plaintiff's Supplemental Motion to Amend, advising that the arguments set forth in Defendant's Response opposing Plaintiff's Initial Motion to Amend would be considered in connection with Plaintiff's Supplemental Motion to Amend.

On October 7, 2025, Defendants filed their Opposition in response to Plaintiff's Motion for Protective Order (Dkt. 83) ("Opposition to Protective Order"). On October 14, 2025, Plaintiff filed Plaintiff's Reply in Support of Emergency Motion for Protective Order Notice of Status and Judicial Notice with Supplemental Affidavit (Dkt. 84) ("Plaintiff's Reply in Support of Protective Order").

Based on the following, Plaintiff's Supplemental Motion to Amend is GRANTED in part and should be DENIED in part; Plaintiff's Motion for IFP Status is DENIED;

Plaintiff's Motion to Extend Deadlines is GRANTED; Plaintiff's Motion to Admit Evidence is DISMISSED as moot in part and DENIED in part without prejudice; Plaintiff's Motion to Compel is DISMISSED as moot; Plaintif's Motion to Modify Scheduling Order is GRANTED in part and DISMISSED as moot in part; Plaintiff's Motion of Compel Initial Disclosures is DENIED; Plaintiff's Motion to Correct the Caption is DISMISSED as moot; Plaintiffs' Motion to Reopen Initial Disclosures is DISMISSED as moot; and Plaintiff's Motion for a Protective Order is DENIED.

## FACTS[4]

Plaintiff Tracey Watson ("Plaintiff" or "Watson"), is a Black woman with seven years of experience as a professional librarian. On October 7, 2021, Plaintiff was hired by Defendants Buffalo and Erie County Public Library ("the Library"), and Board of Trustees of the Buffalo and Erie County Public Library ("the Board") (together, "Defendants"), for a part-time position as a Children's Services and Outreach Librarian I in the Children's Department ("Children's Department") at the Library's central office in downtown Buffalo, New York ("the Buffalo library"). When Plaintiff commenced her job on November 6, 2021, she was the only Black librarian assigned to work in the Children's Department, and the only other Black librarian who worked at the Buffalo library was a full-time librarian assigned to the Adult Department ("Adult Department"). On February 4, 2022, Plaintiff joined the New York State United Teachers Union, specifically, the Librarians' Association of the Buffalo and Erie County Public Library ("the Union").

[4] Taken from the FAC unless referenced otherwise.

On February 17, 2022, at the request of Kristi Dougherty ("Dougherty"), then Plaintiff's direct supervisor and the Manager of Children's Services and Outreach at the Buffalo library, as well as the Union's Recording Secretary, Plaintiff and one Lucylle K. Castaneda, a Library Assistant who is white, attended a "record of counseling" meeting ("counseling meeting"). During the counseling meeting, which was held in the Human Resources Office of the Buffalo library, Dougherty announced that the counseling meeting was not a disciplinary meeting but, rather, was intended to develop strategies regarding communication matters between Plaintiff and Castaneda. Dougherty particularly referred to a matter on February 14, 2022 when, during a 5:00 P.M. "desk change" at the Buffalo library, *i.e.*, the time when Plaintiff's work shift ended and Castaneda's began, Castaneda did not show up until 5:06 P.M., asserting she had to use the ladies' room. Plaintiff responded that she asked Castaneda to be there by 5:00 P.M. when Plaintiff "clocked out." FAC ¶¶ 21-22. According to Plaintiff, prior to the counseling meeting, she had only three interactions with Castaneda and Plaintiff denied having any problem communicating with Castaneda, but it was apparent to Plaintiff that Dougherty had previously spoken with Castaneda about the situation and had taken Castaneda's side.

At the counseling meeting, Dougherty raised another incident on December 11, 2021, in which Castaneda reported she arrived a few minutes early for a desk change but, rather than informing Plaintiff of her arrival, Castaneda when into the workroom. Plaintiff then repeatedly knocked on the door to the workroom which Castaneda perceived as an act of aggression, making Castaneda nervous for the rest of the day. Plaintiff denied ever knocking aggressively on the workroom's door but Castaneda, at

Dougherty's urging, stated the incident caused her to fear Plaintiff and Castaneda began to physically shake.

Plaintiff then raised a matter for discussion concerning Castaneda's interaction with Plaintiff, at the reference desk in the Children's Department of the Buffalo library with three library patrons ("the library patrons"), a white man and his two sons toward whom, according to Plaintiff, Castaneda was very rude and even used foul language causing the man to report the incident to the Library. Dougherty interrupted by reminding Plaintiff, "That issue has already been dealt with." FAC ¶ 23. Plaintiff alleges that according to the Library's work conduct policy, Castaneda's actions toward the library patrons should have resulted in the immediate termination of Castaneda's employment. Dougherty, however, continued that the issue with Plaintiff was not only Plaintiff's verbal remarks, but also her body language, *i.e.*, "how your [*sic*] looking at someone." FAC ¶ 24. According to Plaintiff, during the counseling meeting, Dougherty repeatedly referred to Plaintiff needing to improve her "tone and body language," to which Plaintiff responded by accusing Dougherty of discrimination because of the perception of Plaintiff as an "angry black woman who needs to be taught how to not be aggressive, angry, intimidating, hostile, ill tempered, bitter, loud, or too straight forward," whereas Castaneda was portrayed as an "easily frightened, delicate, shy person that needs to be taught how to stand up for herself. . . ." *Id*. Plaintiff maintains that she was humiliated and embarrassed in front of her co-workers including Castaneda and Children's Librarian I Jennifer Lelinski ("Lelinski"), who was present at the counseling meeting as the Union representative. *Id*. Plaintiff questioned why Lelinski, a recent hire and the Union's recording secretary, attended the counseling meeting instead of

Andrew Maines ("Maines"), then the Union's president, and complained that Lelinski did not actively participate in the counseling meeting in violation of the Union's collective bargaining agreement ("CBA").

During the counseling meeting, Plaintiff also recounted another incident in which Castaneda was directed by Dougherty to let Plaintiff know that Castaneda had arrived for her shift. FAC ¶ 25. Plaintiff was confused by Castaneda's announcement that she had arrived for her shift, *id*., and wondered whether Dougherty had directed Castaneda and other staff members to say or do things to Plaintiff which Plaintiff maintains would have been in violation of the Buffalo and Erie County Public Library Employee Handbook ("Library Handbook"), as well as the Buffalo and Erie County Public Library Personnel Policies and Procedures Manual ("Library Personnel Policy Manual"). *Id*. ¶ 26.

At the end of the counseling meeting, Dougherty instructed Plaintiff to review papers listing issues Plaintiff was to address including Plaintiff's tone of voice, body language, noise level that was intimidating to staff, utilizing a loud voice during cell phone conversations during work hours, and disrupting the work area. FAC ¶ 27. Plaintiff then asked Dougherty the identities of the other staff members who purportedly made complaints about Plaintiff, but Dougherty advised that because the other staff members reported they felt intimidated by Plaintiff, the identities of such staff members would remain unidentified. *Id*. ¶ 28. Plaintiff maintains Dougherty's refusal to identify the other staff members who complained about Plaintiff's behavior violated the Library Personnel Policy Manual. *Id*.

Plaintiff maintains that prior to the counseling meeting, she was not aware of any of the incidents discussed at the meeting. Concerned that the counseling meeting could be used as the basis for future disciplinary action against Plaintiff, Plaintiff submitted a written complaint to the Library ("the Internal Complaint"),[5] complaining about discrimination and harassment. Afterwards, Plaintiff was hesitant to interact with Castaneda for fear Castaneda would assert additional false claims against Plaintiff. Plaintiff asserts the timing of the February 17, 2022 counseling meeting was intended to sabotage Plaintiff's presentation on February 19, 2022, of a "Celebrate Black Inventors" program ("Inventors program"), in violation of the Library Handbook. Plaintiff maintains she was so emotionally disturbed and ill from the allegations made during the counseling meeting that she had to leave the Inventors program presentation.

Plaintiff requested a meeting with the Library's Assistant Deputy Director of Human Resources ("HR") Judy Fachko ("Fachko") to discuss the counseling meeting and how Plaintiff was being discriminated against and harassed based on Plaintiff's race. The meeting between Plaintiff and Fachko was held on Feburary 25, 2022 ("HR meeting"). During the HR meeting, Fachko confirmed that Dougherty was not permitted to disclose to Plaintiff the identities of the other staff members who complained about Plaintiff's demeanor, and Fachko was unable to provide any particulars regarding the asserted complaints. Plaintiff informed Fachko that Plaintiff intended to file a grievance regarding the counseling meeting, but Fachko responded such grievance would be useless because the counseling meeting was not disciplinary in nature and, thus, was

[5] No copy of the Internal Complaint is in the record.

not part of the required disciplinary steps under the Union contact with the Library, *i.e.*, the CBA.

On March 14, 2022, Plaintiff submitted to the Library's then Interim Director Jeannine M. Doyle, now known as Deputy Director and Chief Operating Officer Jeannine M. Purtell ("Purtell"), and Maines, a written grievance complaining of race discrimination and harassment ("the Grievance").[6] On March 17, 2022, Plaintiff received an e-mail from Purtell acknowledging receipt of the Grievance, and advising the Grievance was denied. Several hours later, Plaintiff was instructed to attend a meeting with Dougherty, during which Plaintiff's employment with the Library was terminated ("termination meeting"). Also in attendance at the termination meeting were Fachko and Maines, the latter who, despite being the Union president, said nothing. According to Plaintiff, the reasons given for Plaintiff's termination were newly raised to Plaintiff and were different than the issues raised at the counseling meeting. Plaintiff maintains all those present at the termination meeting were aware of the Grievance Plaintiff filed three days earlier. Plaintiff maintains her termination was based on false allegations and in violation of the CBA and the Library's policy and procedures. Plaintiff alleges that every other person involved in the events giving rise to her termination is white, and that the Library is "severely lacking in diversity among Professional Librarians." FAC ¶ 39.

Later on March 17, 2022, after her employment was terminated, Plaintiff sent an e-mail to one John Gaff ("Gaff"), then Communications Officers for the Union, asking to attend via Zoom a Union meeting that was scheduled for the next day, *i.e.*, March 18,

[6] No copy of the Grievance is in the record.

2022 ("the Union meeting"). In an e-mail sent on March 18, 2022, Gaff responded to Plaintiff's inquiry about attending the Union meeting stating "[i]n accordance with New York State law, when hired for a permanent position there is a probationary period. During the probationary period, an employee can be removed from service without cause." EEOC Charge (Dkt. 64-1) at 9.

Plaintiff alleges that throughout her six-month tenure with the Library, she was subjected to treatment that was different and unequal compared to white employees including, *inter alia*, that Plaintiff was denied a "sign-on bonus," Supplemental Proposed SAC ¶ 86, not supported in her job responsibilities when she was not added to the "system" that would allow Plaintiff to check out books for the Inventors program, *id*. ¶ 87, denied training on and access to library collection development software, *id*. ¶ 89, denied lunch breaks, *id*. ¶ 92, denied materials and staffing for the Inventors program, *id*. ¶¶ 93-95, required to answer the telephone, *id*. ¶ 96, not permitted to work remotely, *id*. ¶ 97, not permitted to attend meetings by Zoom, *id*. ¶ 98, and denied assignments to develop a book collection in the Children's Department. *Id*. ¶ 101.

On June 24, 2022, Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC"), located in Buffalo, New York ("Buffalo EEOC office"), a Charge of Discrimination naming only the Library as the Respondent ("EEOC Charge"). On August 8, 2022, Plaintiff filed an Amended EEOC Charge. On February 2, 2023, Plaintiff received from the Buffalo EEOC office a Notice of Transfer of Charge of Discrimination advising Plaintiff's Amended EEOC Charge was transferred to the Tampa, Florida EEOC office ("Tampa EEOC office") for workload redistribution. On November 16, 2023, Plaintiff received from the Tampa EEOC office a Notice of Right to

Sue Letter advising no determination had been made with regard to Plaintiff's Amended EEOC Charge and that Plaintiff had 90 days in which to file a lawsuit. This action followed.

## DISCUSSION

### 1. Supplemental Motion to Amend

In the present operative complaint, *i.e.*, the FAC, Plaintiff asserts against both the Library and the Board ("Library Defendants"), two claims for relief including race discrimination, harassment, and retaliation in violation of Title VII and § 1981, Complaint, Count 1 ("First Claim"), and Fourteenth Amendment due process and equal protection violations under § 1983, Complaint, Count 2 ("Second Claim"). In the Initial Proposed SAC attached to Plaintiff's Motion to Amend filed February 27, 2025, Plaintiff sought to add Fachko and Purtell as Defendants, and to assert the same First and Second Claims against not only the Library Defendants, but also against Fachko and Purtell in their individual capacities. Plaintiff's subsequently filed Supplemental Motion to Amend also sought to add as Defendants Fachko and Purtell, as well as Dougherty and Maines ("proposed individual defendants"), and to assert against all four proposed individual defendants claims in both their personal and official capacities. The Supplemental Proposed SAC asserts nine claims including race-based discrimination and retaliation in violation of Title VII against Defendants Library and Board (together, "Library Defendants"), Supplemental Proposed SAC, Count I ("proposed First Claim"); retaliation in violation of Title VII against Library Defendants, *id*., Count II ("proposed Second Claim"); harassment and hostile work environment in violation of Title VII

against Library Defendants, *id*., Count III ("proposed Third Claim"); race-based discrimination in violation of § 1981 against Library Defendants, as well as proposed individual defendants, *id*., Count IV-A ("proposed Fourth Claim"); retaliation in violation of § 1981 against Library Defendants and proposed individual defendants, *id*., Count IV-B ("proposed Fifth Claim"); harassment and hostile work environment in violation of § 1981 against Library Defendants and proposed individual defendants, *id*., Count IV-C ("proposed Sixth Claim"); race-based discrimination in violation of the Fourteenth Amendment's Equal Protection Clause against Library Defendants and proposed individual defendants, *id*., Count V ("proposed Seventh Claim"); retaliation in violation of the Fourteenth Amendment's Equal Protection Clause against Library Defendants and proposed individual defendants, *id*., Count VI ("proposed Eighth Claim"); and denial of protected property interests and liberty interest in violation of the Fourteenth Amendment's Due Process Clause against Library Defendants and proposed individual defendants, *id*., Count VII ("proposed Ninth Claim"). Because of the substantial overlap between the claims Plaintiff sought to assert in the Initial Proposed SAC and the Supplemental Proposed SAC, Plaintiff's Initial Motion to Amend was dismissed as moot with Defendants' Response filed in opposition to Plaintiff's Initial Motion to Amend to be considered in connection with Plaintiff's Supplemental Motion to Amend. September 29, 2025 Text Order (Dkt. 82). The court now addresses the Supplemental Motion to Amend.

"The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought."

*Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, —— U.S. ——–, 142 S. Ct. 1112 (2022). Generally, a motion to amend pleadings is governed by Rule 15 which, as relevant, provides "[t]he court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). *See Foman v. Davis*, 371 U.S. 178, 181 (1962) (leave to file an amended complaint "shall be freely given when justice so requires."). "At the outset of litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission." *Sacerdote*, 9 F.4th at 115 (citing Fed.R.Civ.P. 15(a)(1) (providing a party may amend its pleading once, as a matter of course, either within 21 days after serving the pleading or 21 days after service of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b), (e), or (f)). "After that period ends - either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A) — the plaintiff must move the court for leave to amend, but the court should grant such leave "freely . . . when justice so requires" pursuant to Rule 15(a)(2)." *Id.* "This is a 'liberal' and 'permissive' standard, and the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'" *Id.* (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)). "The period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)." *Sacerdote*, 9 F.4th at 115 (citing *Parker v. Columbia Pictures*, 204 F.3d 326, 340 (2d Cir. 2000)).

Preliminarily, the court addresses the fact that Plaintiff's Supplemental Motion to Amend seeks to amend Plaintiff's Initial Motion to Amend which was filed on February 13, 2025, the deadline established by the January 16, 2025 Scheduling Order (Dkt. 34) ("Scheduling Order"), for filing motions to join parties and to amend the pleadings. Because Plaintiff's Initial Motion to Amend was timely filed per the Scheduling Order, Plaintiff was not required to show good cause for the motion; rather, such motion would be granted absent Defendants establishing the requested amendment would cause undue delay, was made in bad faith, for a dilatory motive, or was futile. *Sacerdote*, 9 F.4th at 115. Plaintiff's Supplemental Motion to Amend, however, filed on July 8, 2025, was filed five months after the deadline for motions to join parties and amend. Because the Initial Motion to Amend sought to assert claims against Fachko and Purtell, but not Dougherty and Maines, the court construes Plaintiff's styling of the Supplemental Motion to Amend as a motion to amend the Initial Motion to Amend as an attempt to avoid the consequences of failing to comply with the Scheduling Order's deadline with regard to Dougherty and Maines. Accordingly, Plaintiff's Supplemental Motion to Amend is subject to Rule 16(b)(4)'s requirement that Plaintiff show good cause for failing to seek the relief against Dougherty and Maines in the earlier and timely filed Initial Motion to Amend. Plaintiff, however, fails to provide in the Supplemental Motion to Amend any explanation for the belated request and, thus, has also failed to establish the requisite good cause for belatedly seeking to add Dougherty and Maines as Defendants. Accordingly, Plaintiff's Supplemental Motion to Amend should be DENIED insofar as Plaintiff seeks to add Dougherty and Purtell as Defendants, and the motion is not further addressed as to those individuals. Nevertheless, given that Plaintiff is proceeding *pro*

*se*, and Plaintiff's Initial Motion to Amend Complaint sought to add Fachko and Purtell as defendants, albeit in only their personal as opposed to official capacities, Plaintiff's Supplemental Motion to Amend will be addressed with regard to Fachko and Purtell ("Proposed Defendants").

As a further preliminary matter, Defendants argue that Plaintiff's Supplemental Proposed SAC contains "numerous words, lines, and entire paragraphs shown crossed out in red-colored font" such that "[i]t is unclear whether Plaintiff is intending to include or exclude that crossed-out language." Defendant's First Opposition at 7. Plaintiff attributes the unusual presentation of the Supplemental Proposed SAC to confusion about redline formatting for proposed amended pleadings and clarifies that the redlined text shows only newly added material rather than any deletions. Plaintiff's Reply at 13. Plaintiff further asserts she will file a "clean version" of the Supplemental Proposed SAC upon being granted leave to do so. *Id*. at 13-14. The portions of the Supplemental Proposed SAC appearing in stricken-through red font are somewhat difficult – but not impossible – to read. In light of Plaintiff's *pro se* status, the court will excuse the mistaken attempt to comply with Local Rule 15(b)'s requirement, inapplicable to *pro se* plaintiffs, that amendments or supplements to the operative pleading "shall be identified in the proposed pleading through the use of a word processing 'redline' function or other similar markings . . . ."

Defendants argue Plaintiff should not be permitted to file a further amended complaint because Plaintiff has had ample time to seek further amendment, Defendants' First Opposition at 4-6, and the new claims contained in the Initial Proposed SAC and the Supplemental Proposed SAC are futile because they cannot

withstand a Rule 12(b)(6) motion to dismiss. Defendant's Response to Initial Motion to Amend at 4-5; Defendant's First Opposition at 6-8. Plaintiff provides no argument in opposition.

Inasmuch as Defendants' oppose Plaintiff's Supplemental Motion to Amend as untimely, as discussed above, Discussion, *supra*, at 17-18, the court is recommending Plaintiff's request to add Dougherty and Maines be denied because Plaintiff provides absolutely no basis for extending the time to add such parties. Further, as discussed below, the portions of Plaintiff's Supplemental Motion to Amend does not add any new claims that were not already contained in the Initial Proposed SAC, but only clarifies the claims and the supporting allegations. The court thus needs only to address whether the proposed amendments contained in the Supplemental Proposed SAC are futile.

Amendment to a pleading is futile if the "'proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).'" *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024) (quoting *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). As such, the court addresses the Supplemental Proposed SAC to determine whether the newly proposed allegations contained therein could withstand a motion to dismiss pursuant to Rule 12(b)(6).

On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's nonconclusory allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor). A complaint must be dismissed pursuant

to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting longstanding precedent of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As such, the Supreme Court requires application of "a 'plausibility standard . . . .'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 570, and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"' *Id.* (quoting *Twombly*, 550 U.S. at 557)

"[A] Rule 12(b)(6) motion is addressed to the face of the pleading." *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]." *Trustees of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,

843 F.3d 561, 566 (2d Cir. 2016). "While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Applying the standard for a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) "is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *In re Amaranth Natural Gas Commodities Litigation*, 730 F.3d 170, 80 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). Further, in light of distinct disadvantages faced by *pro se* litigants when compared to counseled litigants, submissions by *pro se* litigants are liberally construed to raise the strongest argument they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing "special solicitude" generally afforded to *pro se* litigants which is not limited to procedures but also includes pleadings (citing cases)). The Second Circuit instructs that district courts "should be particularly solicitous of *pro se* litigants who assert civil rights claims. . . ." *Id*. at 102 (citing *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003)).

"Under *Iqbal* and *Twombly,* then, in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). In the context of employment discrimination claims, the meaning of 'plausibility' is guided by several considerations. *Id*.

First, “a plaintiff must plead ‘factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.’” *Vega*, 801 F.3d at 86 (quoting *Iqbal*, 556 U.S. at 678). Nevertheless, the complaint’s factual allegations are assumed to be true “even if [they are] doubtful in fact,” *id.,* and a complaint must not be dismissed “based on a judge's disbelief of a complaint's factual allegations.” *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) (quoting *Iqbal,* 556 U.S. at 679 (“When there are well-pleaded factual allegations, a court should assume their veracity....”)). “Because discrimination claims implicate an employer's usually unstated intent and state of mind,” *id*. (citing *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985)), “rarely is there ‘direct, smoking gun, evidence of discrimination.” *Id*. (citing *Richards v. N.Y.C. Bd. of Educ.,* 668 F.Supp. 259, 265 (S.D.N.Y.1987), *aff'd,* 842 F.2d 1288 (2d Cir.1988)). Plaintiffs instead “usually must rely on ‘bits and pieces’ of information to support an inference of discrimination, *i.e.,* a ‘mosaic’ of intentional discrimination.” *Id*. (quoting *Gallagher v. Delaney,* 139 F.3d 338, 342 (2d Cir.1998), *abrogated in part on other grounds by Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998)). Again, “at the initial stage of a litigation, the plaintiff's burden is ‘minimal’—he need only plausibly allege facts that provide ‘at least minimal support for the proposition that the employer was motivated by discriminatory intent.’” *Id*. at 86-87 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). Further, as the Supreme Court directs, “[t]he plausibility standard is not akin to a ‘probability requirement.’” *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556) (“Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage....”); *Littlejohn,* 795 F.3d at 310. “On a motion to dismiss, the question is not whether a plaintiff is *likely* to

prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.,* whether plaintiffs allege enough to 'nudge[ ] their claims across the line from conceivable to plausible.'" *Vega*, 801 F.3d at 87 (quoting *Twombly,* 550 U.S. at 570, and citing *Iqbal,* 556 U.S. at 678–80) (italics in original). "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," *Vega*, 801 F.3d at 84 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510 (2002) (observing the *prima facie* case requirement is an evidentiary standard), "it must at a minimum assert nonconclusory factual matter sufficient to "'nudge [ ] [its] claims' . . . 'across the line from conceivable to plausible'" to proceed." *Id*. (quoting *Iqbal,* 556 U.S. at 680 (quoting *Twombly,* 550 U.S. at 570)).

The filing of an amended complaint supersedes the original complaint and renders the original pleading "of no legal effect." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994). Although the Initial Proposed SAC contains only two separately asserted claims for relief, whereas the Supplemental Proposed SAC includes nine separate claims, a comparison of the Initial and Supplemental Proposed SACs demonstrates the same nine claims asserted in the Supplemental Proposed SAC are combined to form the two claims asserted in the Initial Proposed SAC, with the exception that the Supplemental Proposed SAC also seeks to assert claims against Dougherty and Maines which the undersigned recommends be denied, in addition to Fachko and Purtell, in both their individual and official capacities. Because Plaintiff's Supplemental Proposed SAC significantly expands the allegations and provides much more detail regarding the various claims, the court considers whether any such claims

would survive a motion to dismiss pursuant to Rule 12(b)(6), including whether the proposed claims may be maintained against each of the asserted defendants as well as whether the allegations are plausible.

**A. Title VII**

With respect to Title VII employment discrimination, Defendants oppose amending the complaint to permit Plaintiff to assert her Title VII claims against Proposed Defendants Fachko and Purtell because only the Library was named as a Respondent to the EEOC Charge.[7] Defendant's Response to Initial Motion to Amend at 3-4. The Supplemental Proposed SAC, however, does not likewise seek to assert the Title VII claims against Fachko and Putrell. Although Plaintiff does not respond in opposition to this argument, the court briefly addresses it in the interest of completeness.

In general, Title VII claims may be brought in federal court only after the plaintiff files a timely charge with the EEOC and receives an EEOC right-to-sue letter. 42 U.S.C. § 2000e-5(e), (f); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (the timely filing of an administrative charge and obtaining a right-to-sue letter is "an essential element" of Title VII's statutory scheme and thus a precondition to bringing such claims in federal court). The purpose of this so-called "administrative exhaustion" is to avoid unnecessary judicial action by the federal courts by "[giving] the administrative agency the opportunity to investigate, mediate, and take remedial action." *Stewart v. United States Immigr. & Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985). Nevertheless, because the district court's subject matter jurisdiction

[7] The Library is also the only respondent named in the Amended EEOC Charge (Dkt. 64-1).

does not depend on the exhaustion of administrative remedies, the requirement is "subject to waiver, estoppel, and equitable tolling." *Francis v. City of New York*, 235 F.3d 763, 767 (2d Cir. 2000). Plaintiff does not argue that any of these exceptions apply here. Nor does Plaintiff rely on the so-called "identity of interest" exception as excusing her failure to name Proposed Defendants in the EEOC Charge. The identity of interest exception "permits a Title VII action to proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991). Whether such identity exists depends on "whether the plaintiff could have learned the identity of the unnamed party before filing with the EEOC, whether the named and unnamed parties actually had similar interests, whether the unnamed party was prejudiced by the failure to include it in EEOC proceedings, and whether the unnamed party has represented to the plaintiff that it would relate to her through the named party." *Carcasole-Lacal v. Am. Airlines, Inc.*, 2005 WL 1587303, at *1 (2d Cir. July 7, 2005) (citing *Johnson,* 931 F.2d at 209-10). Here, however, the identity of interest exception cannot apply in this case with regard to Proposed Defendants Fachko and Purtell because only employers can be held liable for Title VII violations. *See Malcom v. Rochester City School District*, 828 Fed.Appx. 810, 812 n. 2 (2d Cir. 2020) (affirming district court's dismissal of plaintiff's compliant without leave to replead to add claims against individual employees because "only employers are liable" under Title VII). This is consistent with the fact that the form on which Plaintiff's Amended EEOC Charge was filed does not ask for the names of the defendants, but only the name of the employer who is thereafter referred to as the Respondent. *See* EEOC Charge (Dkt.

64-1). Significantly, Plaintiff does not argue that either Fachko or Purtell was Plaintiff's employer. Accordingly, there is no merit to the argument that Plaintiff did not exhaust administrative remedies with regard to Fachko and Purtell by failing to name them as Respondents in the EEOC Charge.

Insofar as Plaintiff seeks to add Fachko and Purtell as Defendants to the Title VII claims, Plaintiff's Supplemental Motion to Amend is futile because individuals, including those with supervisory control over a plaintiff, are not subject to personal liability under Title VII. *See Patterson v. County of Oneida*, NY, 375 F.3d 206, 221 (2d Cir. 2004) (dismissing Title VII claims asserted against individual defendants in both their personal and official capacities, quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) ("individuals are not subject to liability under Title VII"), and quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII" (*abrogated on other grounds by Burlington Industries, Inc.*, 524 U.S. 742)).[8] Plaintiff's Supplemental Motion to Amend thus should be DENIED insofar as Plaintiff seeks to assert the Title VII claims, including the proposed First, Second, and Third Claims against Proposed Defendants Fachko and Purtell.

Although not discussed by Defendants, because the filing of an amended pleading supersedes the previous operative pleading, the court considers whether the proposed Title VII claims are plausibly alleged against Library Defendants. A plain

[8] Defendants do not challenge whether the Board, which also was not named as a Respondent to the EEOC Charge, can be held liable under Title VII. *See Kohlhausen v. SUNY Rockland Community College*, 2011 WL 1404934, at * 4 (S.D.N.Y. Feb. 9, 2011) (dismissing Title VII claims against, *inter alia*, the individual members of the board of trustees for community college because such individuals did not meet the definition of an "employer").

reading of the Supplemental Proposed SAC establishes Plaintiff states claims against the Library Defendants under Title VII for disparate treatment (proposed First Claim), and retaliation (proposed Third Claim), but not for hostile work environment (proposed Second Claim). Initially, the court observes that although the Board was not named as a Respondent in the EEOC Charge, Defendants do not object to the Supplemental Proposed SAC on that basis and the issue is thus waived. *See Francis v City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (proper administrative exhaustion under Title VII is a waivable condition precedent to bringing suit rather than a jurisdictional requirement).

Insofar as the Board is alleged to have authority over employment decisions for the Library, the Board may be sued as an employer for purposes of Title VII. *See Kohlhausen v. SUNY Rockland Community College*, 2011 WL 1404934, at * 4 (S.D.N.Y. Feb. 9, 2011) (recognizing that although individuals, including board members, may not be liable under Title VII, the actions of such individuals may be imputed to the employer and the employer's board of trustees that was charged with making employment decisions). Further, Plaintiff's status as a probationary employee at the time of the conduct of which she complains does not bar her Title VII claims. *See Pietras v. Board of Fire Commissioners of the Farmingville Fire District*, 180 F.3d 468, (2d Cir. 1999) (affirming district court's determination that the plaintiff, although a probationary employee, could nevertheless be an employee for purposes of Title VII if the plaintiff could show she had received numerous job-related benefits which was consistent with defining under Title VII an employee as one who "has received direct or indirect remuneration' from the alleged employer." (quoting *O'Connor v. Davis*, 126 F.3d 112,

116 (2d Cir. 197), *cert. denied*, 522 U.S. 1114 (1998)). Here, Defendants do not argue that Plaintiff did not receive at least one job-related benefit, such as a paycheck, so as to bar any employment discrimination claim.

A plaintiff may base a Title VII claim on several theories of liability including disparate treatment, hostile work environment, and retaliation. *See Ezeh v. VA Medical Center, Canandaigua, NY*, 2014 WL 4897905, at * 16 (W.D.N.Y. Sept. 29, 2014) (acknowledging the plaintiff stated claims under Title VII for disparate treatment, hostile work environment, and retaliation).

With regard to Plaintiff's proposed First Claim, to state a plausible claim for disparate treatment under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against her, and (2) her race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87). "[T]he "'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' *i.e.*, a discriminatory reason." *Id*. (quoting *Stratton v. Dep't for the Aging for City of N.Y.,* 132 F.3d 869, 878 (2d Cir.1997) (quoting *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities,* 115 F.3d 116, 119 (2d Cir.1997))). Here, Plaintiff alleges, *inter alia*, that she was subjected to disparate treatment in the terms and conditions of employment based on her race when, in contrast to her white co-workers, Plaintiff was denied programming support, staffing and professional development opportunities, denied access to tools and systems essential to the job, denied remote work privileges, excluded from communications, and terminated without progressive disciplinary notice. Supplemental Proposed SAC ¶ 123.

These alleged facts provide "'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Vega*, 801 F.3d at 87 (quoting *Littlejohn*, 795 F.3d at 311). The proposed First Claim thus plausibly alleges a race-based Title VII disparate treatment claim against Library Defendants.

As for Plaintiff's proposed Title VII retaliation claim, Plaintiff's proposed Third Claim, Plaintiff "must plausibly allege that (1) the employer took adverse action against [her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87. "At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id*. (citing *Littlejohn,* 795 F.3d at 310 (requiring facts "suggesting an inference of discriminatory motivation"). In the instant case, Plaintiff alleges she engaged in activity protected under Title VII when she verbally complained to Dogherty and Lesinski on February 14, 2022 that she was being subjected to race-based discrimination in the workplace, Supplemental Proposed SAC ¶ 134.1, verbally reported race-based discrimination to Fachko on February 25, 2022, *id*. ¶ 134.2, and submitted her Grievance on March 14, 2022. *Id*. ¶ 134.3. On March 17, 2022, Plaintiff's Grievance was denied by Purtell, and a few hours later, Plaintiff's employment was terminated. *Id*. ¶¶ 135-36. The temporal proximity between Plaintiff's participation in protected activity and the termination of her employment is circumstantial evidence sufficient to plausibly allege a Title VII retaliation claim. *See Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 239 (2d Cir. 2024) (circumstantial evidence of a causal

relationship between the protected activity and the adverse employment action "may include '[c]lose temporal proximity' between the plaintiff's protected activity and the adverse action taken against her." (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010) (brackets in *Moll*)). Plaintiff's proposed Second Claim is thus plausible alleged and Plaintiff's Supplemental Motion to Amend therefore is GRANTED with regard to the proposed Second Claim for retaliation against Library Defendants.

For a plausible claim for hostile work environment under Title VII, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). "[A] plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive – that is, ... creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [protected class].'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001) (bracketed material in *Patane*). "Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse,' and 'we have repeatedly cautioned against setting the bar too high' in this context." *Id*. (quoting *Terry v. Ashcroft,* 336 F.3d 128, 148 (2d Cir.2003) (emphasis omitted in *Patane*).

Moreover, the hostile environment must be based on the Plaintiff's protected class. *See McSweeney v. Cohen*, 776 F.Supp.3d 200, 262 (S.D.N.Y. 2025) ("A hostile work environment is not one that is bad for all living things in a manner that happens to involve [characteristics of the protected class]; rather it is one that is *discriminatorily* hostile to an employee based on *his or her* [membership in the protected class]." (quoting *Bernstein v. N.Y.C. Dep't of Educ.*, 2020 WL 6564809, at *7 (S.D.N.Y. Nov. 9, 2020) (further quotation omitted; bracketed material and italics in *McSweeney*))). Further, "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn*, 795 F.3d at 321 (internal quotations omitted). "In determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id*. (quoting *Harris,* 510 U.S. at 23).

Here, in support of her Title VII hostile work environment claim, Plaintiff alleges that throughout her employment at the Library, she was subjected to a continuous pattern of race-based hostility that included "Denial of program support, staffing, and professional collaboration; targeted and unwarranted racial and discriminatory criticism of her demeanor, tone and communication style; Issuance of a pretextual Record of Counseling based on vague and racially motivated allegations; Social isolation and exclusion from meetings, communications, and collaborative initiatives; Surveillance and micromanagement not imposed on similarly situated white colleagues; directing other employees to harass the plaintiff, and delegation of harassing behavior by

supervisors." Supplemental Proposed SAC ¶ 156. These allegations, however, are devoid of any racially-based discriminatory intimidation or ridicule or other hostility related to Plaintiff's race as required to state a plausible Title VII hostile work environment claim. *Littlejohn*, 795 F.3d at 320–21. Accordingly, Plaintiff's Supplemental Motion to Amend should be DENIED as to the proposed Third Claim seeking to assert a Title VII hostile work environment claim against Library Defendants.

Therefore, Plaintiff's Supplemental Motion to Amend is GRANTED as to the proposed First Claim (Title VII disparate treatment), and the proposed Second Claim (Title VII retaliation) against Library Defendants, but should be DENIED as to the proposed Third Claim (Title VII hostile work environment) against Library Defendants, and should be DENIED as to all Title VII claims against Proposed Defendants.

**B. § 1983**

The remaining claims Plaintiff seeks to assert, including violations of 42 U.S.C. § 1981 ("§ 1981"), the First Amendment, and the Fourteenth Amendment, are proposed as claims pursuant to § 1983. Plaintiff seeks to assert these claims against the Library, the Board, and the individual Proposed Defendants. Although Defendants oppose adding claims against Proposed Defendants in their individual capacities with regard to Plaintiff's Title VII and § 1981 claims, Defendants' Response to Initial Motion to Amend at 1, 4-5, Defendants do not provide any argument with regard to Plaintiff's attempt to assert § 1983 claims against Proposed Defendants other than asserting such claims are time-barred by the applicable three-year statute of limitations for § 1983 claims. Defendants' First Opposition at 8.

"To state a claim under § 1983, a plaintiff must allege two elements: (1) 'the violation of a right secured by the Constitution and laws of the United States,' and (2) 'the alleged deprivation was committed by a person acting under color of state law.'" *Vega*, 801 F.3d at 87-88 (quoting *Feingold,* 366 F.3d at 159 (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)) (further internal quotation omitted in *Vega*). Pursuant to § 1983, a plaintiff can sue a municipal entity as well as municipal employees in their personal capacities for deprivations of constitutional rights. *Quinones v. City of Binghamton*, 997 F.3d 461, 466 (2d Cir. 2021). "Through § 1983, Congress sought 'to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (citing *Monroe v. Pape,* 365 U.S. 167, 172 (1961)). By enacting § 1983, Congress "authorized suits to redress deprivations of civil rights by *persons* acting 'under color of any [state] statute, ordinance, regulation, custom, or usage.'" *Hafer*, 502 U.S. at 27 (quoting 42 U.S.C. § 1983) (italics added). In order to maintain a § 1983 action, a plaintiff must allege that both the conduct complained of was "committed by a person acting under color of state law" and that the conduct "deprived [plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

"'To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). As discussed below, whether Plaintiff's proposed claims are

sufficiently alleged under § 1983 requires the court to consider whether the Supplemental Proposed SAC asserts a claim for § 1983 liability against Library Defendants as municipal defendants, as well as against Proposed Defendants in their official or personal capacities.

In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978) ("*Monell*"), the Supreme Court decided that a municipality or municipal agency may be liable under § 1983 when its policy or custom causes a constitutional violation. *Monell*, 436 U.S. at 694. "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). A municipality "cannot be held liable on the theory of *respondeat superior*; the plaintiff must establish that the municipality's policy or custom *itself* was a 'moving force of the constitutional violation.'" *Chislett v. New York City Dep't of Education*, __ F.4th __, 2025 WL 2725669, at * 6 (2d Cir. Sept. 25, 2025) (quoting *Monell*, 436 U.S. at 691, 694). "A natural person may be liable under § 1983 only if the official was 'personally involved in the alleged deprivation.'" *Id*. (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)). Further, the issue of causation is for the jury. *See Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) ("[W]hether the relevant conduct of the pertinent policymaking official caused the injury of which the plaintiff complains is a question of fact for the jury.").

"'To show a policy, custom, or practice [justifying municipal liability], the plaintiff need not identify an express rule or regulation.'" *Chislett*, 2025 WL 2725669, at *6 (quoting *Patterson*, 375 F.3d at 226 (bracketed material in *Chislett*)). "It suffices to

establish that discriminatory practices were 'persistent and widespread' so as 'to constitute a custom or usage with the force of law' and that a discriminatory practice of subordinates was 'so manifest as to imply the constructive acquiescence of senior policymaking officials.'" *Id*. (quoting *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870–71 (2d Cir. 1992) (further internal quotation omitted in *Chislett*), and citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) ("[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.")). "A municipal policy can even consist of 'inaction.'" *Id*. at *6 (citing *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011), and *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("Specifically, *Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.")). The degree of factual specificity required by *Iqbal*, to allege personal involvement in a § 1983 claim includes a description as to the nature of the asserted unconstitutional policies, customs and practices that Proposed Defendants either adopted or allowed to continue. *See Houghton v. Cardone*, 295 F.Supp.2d 268, 276 (W.D.N.Y. 2003) (requiring "factual basis" as opposed to a generalized allegation to support allegations that § 1983 defendant was personally involved in alleged "deprivations") (citing caselaw)).

Relevant to the instant case, the Library is a public corporation, *Buffalo & Erie County Public Library v. County of Erie*, 577 N.Y.S.2d 993, 995 (4th Dept. 1991), and as

a public corporation, is subject to *Monell* liability. *See Sanders v. Coughlin*, 2017 WL 1196409, at * 5 (W.D.N.Y. March 31, 2017) (quoting *Eslin v. Hous. Auth. of Mansfield*, 2012 WL 113666, at *3 (D.Conn. Jan. 13, 2012) ("The Second Circuit and district courts within it have repeatedly held that Monell's 'policy or custom' standard applies to independent public corporations created under state law . . . .").[9] The Board is also subject to § 1983 liability under *Monell* because as an arm of the Library, a municipal defendant, the Board was the entity that actually removed Plaintiff from her employment with the Library. *See Langton v. Town of Chester*, 168 F.Supp.3d 587, 603 (S.D.N.Y. 2016) (denying defendant library board's motion to dismiss on the basis that the library board was not subject to liability under § 1983).

Nevertheless, the Supplemental Proposed SAC does not allege that the Library Defendants created, maintained, or upheld any policy, custom, or practice so as to state a § 1983 claim against such municipal defendants for liability under *Monell*. *See Chislett*, 2025 WL 2725669, at * 6 ("the plaintiff must establish that the municipality's

---

[9] That Defendant Library is a state actor is undisputed. *See* Defendant's Response to Initial Motion to Amend at 5 ("The Library was established by the County of Erie and Chartered by the State University Board of Regents in 1953 pursuant to 1953 N.Y. Laws ch. 768, N.Y. Unconsol. Laws §§ 6211-6227." (citing *Buffalo & Erie County Public Library*, 577 N.Y.S.2d at 994 (determining, *inter alia*, that "the Library is not a County department, but is a distinct and separate corporation chartered by the State University Board of Regents; that the Library, not the County, has the power and duty to determine and carry out all policies and principles pertaining to operations of the Library; that Library trustees have the exclusive power and duty to use Library property and to appoint, manage and control Library personnel, including the power to fix the salaries of such personnel within the available appropriation; that the County may not interfere with the proper exercise of the Trustees' power to appoint personnel; that upon adoption of the County budget, the County share of the Library appropriation constitutes a fund for Library purposes, and the use and expenditure of the available appropriation is within the exclusive management and control of the Library Trustees, subject to the audit powers of the County Comptroller and subject to those fiscal laws applicable to the expenditure of public funds generally; that New York State library aid to the Library pursuant to sections 272 and 273 of the Education Law, local revenues generated by activities of the Library, and the County share of the final appropriation is the property of the Library and must be kept and maintained in a separate fund subject to the exclusive use of the Library Trustees upon the submission of appropriate vouchers, or, upon written demand of the Trustees, to be paid over to the Library treasurer . . . .").

policy or custom *itself* was a 'moving force of the constitutional violation.'" (quoting *Monell*, 436 U.S. at 691, 694). Accordingly, Plaintiff's Supplemental Motion to Amend should be DENIED insofar as Plaintiff seeks to assert any § 1983 claims against the Library Defendants including based on actions by the Board members as well as by Fachko and Purtell.[10]

Plaintiff also seeks to assert her § 1983 claims against the individual Proposed Defendants in "in their Official and Individual Capacities." Supplemental Proposed SAC at ¶ 83 (Fourth Claim), ¶ 89 (Fifth Claim), ¶ 95 (Sixth Claim), ¶ 101 (Seventh Claim), ¶ 106 (Eighth Claim), and ¶ 111 (Ninth Claim). Plaintiff does not indicate whether the term "individual" is intended to refer to asserting claims against Proposed Defendants in their individual, yet official capacities, or in their personal capacities; the distinction is significant.

"[T]he distinction between official-capacity suits and personal-capacity suits is more than 'a mere pleading device. . . .'" *Hafer*, 502 U.S. at 27 (quoting *Will*, 491 U.S. at 71). The Supreme Court instructs that "official-capacity suits ''generally represent only another way of pleading an action against an entity of which an officer is an agent.''" *Hafer*, 502 U.S. at 25 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978))). "Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation." *Hafer*, 502 U.S. at 25 (citing, *inter alia*, Fed.Rule Civ.Proc. 25(d)(1), and Fed.Rule App.Proc. 43(c)(1)).

[10] Because Plaintiff has failed to plead the requisite policy or custom to sustain a § 1983 claim against Library Defendants as required by *Monell*, the court does not further address the § 1983 claims against Library Defendants with regard to the proposed claims pursuant to § 1981, the First Amendment, and the Fourteenth Amendment.

Because "an official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office, . . . it is no different from a suit against the state," for which monetary relief may not be recovered from the state officials. *Hafer*, 502 U.S. at 26 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)). "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Hafer*, 502 U.S. at 27, and such "[s]uits against state officials in their official capacity therefore should be treated as suits against the State." *Id*. (citing *Graham*, 473 U.S. at 166). Also, "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law.'" *Id*. (quoting *Graham*, 473 U.S. at 166 (quoting *Monell*, 436 U.S. at 694).

As stated, a § 1983 "official capacity suit against a municipal official 'is, in all respects other than name, to be treated as a suit against the [governmental] entity.'" *Quinones*, 997 F.3d at 466 n. 2 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (bracketed material in *Quinones*)). *See also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[§ 1983] claim against a municipal employee in her official capacity is deemed brought against the municipality itself"). Because § 1983 claims against municipal officials in their official capacity are considered to be claims against the defendants' municipality itself, such claims are subject to dismissal as duplicative of the claims against the municipality which the official serves. *See Wierzbic v. County of Erie*, 2018 WL 550521, at *6 (W.D.N.Y. Jan. 25, 2018) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001)). Accordingly, the official-capacity § 1983 claims Plaintiff seeks to assert against

Proposed Defendants, which include the proposed official-capacity claims pursuant to § 1981, the First Amendment, and the Fourteenth Amendment, "merge into [her] claims against [the Library]." *Quinones*, 997 F.3d at 466 n. 2. Plaintiff's Supplemental Motion to Amend is thus futile with regard to the proposed Fourth, Fifth, and Sixth, Seventh, Eighth, and Ninth Claims alleging violations of § 1981, the First Amendment, and the Fourteenth Amendment under § 1983, and which Plaintiff seeks to assert against Fachko and Purtell in their official capacities. Plaintiff's Supplemental Motion to Amend thus should be DENIED insofar as Plaintiff seeks to allege official capacity claims under § 1983 for violations of § 1981, the First Amendment, and the Fourteenth Amendment against Proposed Defendants. These same claims, however, may survive as against Proposed Defendants in their personal capacities provided the Supplemental Proposed SAC alleges sufficient facts to establish the claims are plausible, and the court next discusses whether the Supplemental Proposed SAC sufficiently alleges Proposed Defendants were personally involved in the § 1983 claims Plaintiff seeks to assert against them in their individual capacities.

"[O]fficers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.'" *Hafer*, 502 U.S. at 26 (citing *Will*, 491 U.S. at 71, n. 10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'") (quoting *Graham,* 473 U.S. at 167, n. 14). In other words, an official-capacity suit "is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in

his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Graham*, 473 U.S. at 166 (quoting *Brandon v. Holt*, 469 U.S. 464, 471–472). A government official sued in a personal-capacity role is a 'person' subject to a § 1983 suit for damages for actions taken in her official capacity. *Hafer*, 502 U.S. at 27. Further, "the plaintiff in a personal-capacity suit need not establish a connection to governmental 'policy or custom . . . .'" *Id*. at 25 (citing *Graham*, 473 U.S. at 166–167).

Suits brought against government officials in their personal capacities "seek to impose individual liability upon a government officer for actions taken under color of state law. Significantly, "[a] state employee acting in his official capacity is acting 'under color of state law.'" *Vega*, 801 F.3d at 87-88 (quoting *Feingold*, 366 F.3d at 159). Thus, '[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'" *Hafer*, 502 U.S. at 25 (italics in *Hafer*) (quoting *Graham*, 473 U.S. at 166). "Once the color of law requirement is met, a plaintiff's 'equal protection claim parallels his Title VII claim,' except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual." *Id.* (quoting *Feingold*, 366 F.3d at 159). "Thus, for a § 1983 discrimination claim to survive a motion for judgment on the pleadings or a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting 'under color of state law.'" *Id*. In other words, at this stage of the proceedings, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate

question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. To meet this "minimal" burden, "plaintiffs usually must rely on 'bits and pieces' of information to support an inference of discrimination, *i.e.*, a 'mosaic' of intentional discrimination." *Vega*, 801 F.3d at 86 (citations omitted).

Additionally, for § 1983 liability of an individual, a defendant must have been personally involved in the alleged deprivation. *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (a § 1983 plaintiff must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution" (quotation and citation omitted). *See also Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) ("To 'establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show ... the defendant's personal involvement in the alleged constitutional deprivation.'") (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)). Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983." *Piasecki v. Cnty. of Erie*, 2023 WL 2992034, at *8 (W.D.N.Y. Apr. 18, 2023); *Bellinger v. Fludd*, 2020 WL 6118823, at *2 (E.D.N.Y. Oct. 16, 2020) ("A plaintiff must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation." (citing *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010))).

Until recently, the personal involvement of a supervisory defendant for § 1983 purposes could be established by showing either that the defendant directly participated in the alleged constitutional violation or through four alternative means including failing

to report or remedy a constitutional violation, creating the policy or custom under which the constitutional violation occurred, being grossly negligent in supervising the subordinates who committed the wrongful act, or exhibiting deliberate indifference to the plaintiff by failing to act on information that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 2995) (citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994)). In *Tangreti*, however, the Second Circuit rescinded such broad forms of supervisory liability and, in keeping with the Supreme Court's declaration in *Iqbal* concerning § 1983's personal involvement requirement, held that a § 1983 plaintiff "must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). "*Iqbal*'s 'active conduct' standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation." *Tangreti*, 983 F.3d at 617 n. 4 (quoting *Bellamy v. Mt. Vernon Hosp.* 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009)). This court has found that after *Tangreti*, the only so-called *Colon* criteria that can establish personal involvement of a supervisory defendant for a viable constitutional violation are the defendant's direct participation in the alleged unconstitutional violation – the so-called "active conduct" standard, the defendant's creation of a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *See Marcus v. City of Buffalo*, 2023 WL 5154167, at *5 (W.D.N.Y. Aug. 10, 2023) (citing *Tangreti*, 983 F.3d at 617 n. 4) (citing cases), *report and recommendation adopted*, 2023 WL 7016546 (W.D.N.Y. Oct. 25, 2023)). Accordingly, "'a plaintiff must plead and prove 'that each Government-official defendant, through the official's own

individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (underlining added).

Plaintiff therefore may pursue § 1983 claims against Proposed Defendants in their personal, but not official, capacities provided Plaintiff has alleged sufficient facts to show such claims are plausible, a requirement that, at the pleading state, is minimal. *Littlejohn*, 795 F.3d at 311 (allegations "need only give plausible support to a minimal inference of discriminatory motivation"). The court thus considers whether the Supplemental Proposed SAC states a claim for a § 1983 violation against Proposed Defendants in their personal capacities based on a violation of § 1981, the First Amendment, or the Fourteenth Amendment Equal Protection or Due Process Clauses.

**1. § 1981**

As stated, Plaintiff's § 1981 claims are considered as asserted pursuant to § 1983 which "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson*, 375 F.3d at 224-25 (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68-69 (2d Cir. 2000)). The activities enumerated in § 1981 include the right to make and enforce contracts, to sue, and to the full and equal benefit of all laws and proceedings for the security of persons and property. *See* 42 U.S.C. § 1981; *accord Bishop v. Best Buy, Co.*, 2010 WL 4159566, at *4 (S.D.N.Y. Oct. 13, 2010). Significantly, an at-will employment agreement that is governed by New York law constitutes a contract for the purposes of a § 1981 claim. *Whidbee*, 223 F.3d at 68 (citing *Lauture v. IBM*, 216 F.3d 258 (2d Cir. 2000)). Employment discrimination claims may be brought under § 1981 against individual defendants in their personal capacity based on disparate treatment,

*see Littlejohn*, 795 F.3d at 312 (discussing § 1981 disparate treatment claim against supervisor in personal capacity in context of motion to dismiss), retaliation, *see Knox v. CRC Management Co., LLC*, 134 F.4th 39, 49-50 (2d Cir. 2025) (analyzing, and thus recognizing, § 1981 race-based discriminatory retaliation claim), and hostile work environment, *see id.*, 134 F.4th at 50-52 (recognizing and considering § 1981 race-based hostile work environment claim). Plaintiff's proposed § 1981 claims thus may be brought against Proposed Defendants in their personal capacities so long as Plaintiff has alleged sufficient facts to state such claims. Further, "[a]n individual may be held liable under §§ 1981 and 1983 only if that individual is 'personally involved in the alleged deprivation.'" *Littlejohn*, 795 F.3d at 314 (citing *Back,* 365 F.3d at 127 (§ 1983); *Patterson,* 375 F.3d at 229 (§ 1981)).

"Relevant here, 'Section 1981 discrimination claims are analyzed under the same substantive standard applicable to Title VII discrimination claims,'" *Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp.3d 433, 447 (W.D.N.Y. 2021) (quoting *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp.3d, 396, 410 (S.D.N.Y. 2014) (collecting cases), "as are Section 1981 retaliation claims," *id*. (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010), and *Johnson v. City of New York*, 2019 WL 4468442, *13 (E.D.N.Y. 2019) ("Claims of employment discrimination and retaliation under §[ ] 1981 . . . are analyzed under the same framework that applies to Title VII claims.")). Here, such factual allegations are pleaded in the Supplemental Proposed SAC with regard to Plaintiff's § 1981 retaliation claims she seeks to assert against Fachko and Purtell, but not with regard to her § 1981 disparate treatment and hostile work environment claims.

In particular, the facts asserted in the Supplemental Proposed SAC fail to sufficiently allege Plaintiff was subjected to disparate treatment in her employment on the basis of her race. Plaintiff alleges she is a Black woman who, after being hired by the Library as a Children's Services and Outreach Librarian I, was "marginalized within the department, and denied access to opportunities routinely afforded to similarly situated colleague [including training and access to materials, books, and databases]." Proposed Supplemental SAC ¶ 25. Although Plaintiff asserts she was denied the same training and was not provided access to the same materials, books, and databases as white employees, Plaintiff maintains it was Dougherty who made such decisions and fails to allege any facts to establish that either Fachko or Purtell was personally involved in such conduct. In addition, the facts Plaintiff alleges in support of her disparate treatment claim against Fachko, who was Assistant HR Director, and Purtell, then Interim Director of the Library, include that Fachko and Purtell failed to properly investigate the Grievance Plaintiff submitted to Purtell on March 14, 2022 regarding her perceived disparate treatment. *Id*. ¶¶ 45, 61, 73-78. The failure to investigate a discrimination complaint, however, did not alter any terms or conditions of Plaintiff's employment and, as such, cannot constitute the requisite adverse employment action to sustain Plaintiff's § 1981 disparate treatment claim. *See Fincher v. Depository Trust and Cleaning Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) (failure to investigate plaintiff's employment discrimination complaint did not, by itself, alter the terms and conditions of the plaintiff's employment but, rather, "it preserved the very circumstances that were the subject of the complaint"). Because supervisory personnel may not be held liable for employment discrimination in which they were not personally involved, *Littlejohn*, 795

F.3d at 314, these proposed claims also fail. The Supplemental Proposed SAC thus fails to sufficiently plead facts that support either Fachko or Purtell was personally involved in any alleged disparate treatment based on Plaintiff's race so as to nudge her race-based employment discrimination disparate treatment "across the line from conceivable to plausible." *Vega v. Hempstead Union Free School District,* 801 F.3d 72, 86 (2d Cir. 2015). Plaintiff's Supplemental Motion to Amend thus should be DENIED as to the proposed § 1981 disparate treatment claim, Plaintiff's proposed Fourth Claim, against Proposed Defendants in their personal capacities.

The court next addresses whether Plaintiff has sufficiently alleged a hostile work environment claim under § 1981 against Proposed Defendants in their personal capacities. To state a hostile work environment claim [under § 1981], a plaintiff must allege that the complained of conduct (1) is objectively severe or pervasive in that it creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic. *LeGrand v. Walmart Stores E., LP*, 779 Fed.Appx. 779, 782 (2d Cir. 2019) (citing *Patane*, 508 F.3d at 113, and *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 n. 4 (2d Cir. 2014)). *See also Littlejohn*, 795 F.3d at 320-21 (to state a hostile work environment under § 1981 "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'") (quoting *Harris,* 510 U.S. at 21 (citations and internal quotation marks omitted in *Littlejohn*)). "'This standard has both objective and subjective

components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive.'" *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citing *Harris,* 510 U.S. at 21–22)). "'The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* (quoting *Raspardo*, 770 F.3d at 114). In determining whether a plaintiff suffered a hostile work environment, the court must consider "the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id*. (quoting *Harris,* 510 U.S. at 23).

In the instant case, Plaintiff's hostile work environment claim is predicated on allegations that she was subjected to "Continuous marginalization and exclusion from departmental communications and collaborations; Denial of access to professional tools, training, and resources routinely provided to white colleagues; Public undermining of Plaintiff's work and programming efforts; Disparate disciplinary treatment, including the issuance of a pretextual Record of Counseling; Racial stereotyping, surveillance, and administrative isolation intended to intimidate and marginalize." Supplementary Proposed SAC ¶ 215. Even assuming, *arguendo*, Plaintiff alleged sufficient facts to establish the personal involvement of Fachko and Purtrell in such conduct, these allegations are devoid of any facts indicating such actions were accompanied by racially discriminatory intimidation or ridicule. *Littlejohn*, 795 F.3d at 320. These allegations thus cannot support a finding of hostile work environment that is so severe or pervasive

as to have altered the conditions of Plaintiff's employment. *Id*. (citing *Fleming v. MaxMara USA, Inc.,* 371 Fed.Appx. 115, 119 (2d Cir.2010) (concluding that no hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"), and *Davis–Molinia v. Port Auth. of N.Y. & N.J.*, 2011 WL 4000997, at *11 (S.D.N.Y., Aug. 19, 2011) (finding that "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," "yell[ing] and talk[ing] down to," and an increased workload of menial tasks, among other factors, was not enough to show that defendants' conduct was sufficiently severe or pervasive), *aff'd,* 488 Fed.Appx. 530 (2d Cir.2012)). *Compare LeGrand*, 779 Fed.Appx. at 783 (plaintiff, a former employee, plausibly stated § 1981 claim for hostile work environment against former supervisor and manager who allegedly made racist comments about the plaintiff to co-workers, regardless of whether the comments were made in the plaintiff's presence). Here, in the absence of any allegations that Defendants engaged in any racially discriminatory intimidation or ridicule, Plaintiff's Supplemental Motion to Amend should be DENIED insofar as Plaintiff seeks to allege her proposed Sixth Claim for hostile work environment in violation of § 1981 against Proposed Defendants in their personal capacities.

Nevertheless, Plaintiff has sufficiently alleged a retaliation claim against Fachko and Purtell under § 1981. "For a retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege that the defendants (1) discriminated—or took an adverse employment action—against her (2) because she opposed an unlawful employment

practice." *LeGrand*, 779 Fed.Appx. at 783 (citing *Vega*, 801 F.3d at 90). "In the retaliation context, an adverse employment action is one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id*. (quoting *Vega*, 801 F.3d at 90) (further internal quotation omitted).

In the instant case, Plaintiff alleges that on February 14, 2022, she verbally reported to Fachko that Plaintiff was being subjected to race-based employment discrimination, Supplemental Proposed SAC ¶ 189, on March 14, 2022 she submitted her Grievance to, *inter alia*, Purtell, *id*. ¶¶ 74, 79, 190, and on March 17, 2022, Plaintiff's employment with the Library was terminated. *Id*. ¶ 191. According to Plaintiff, both Fachko and Purtell had knowledge of Plaintiff's participation in the protected activity, as well as authority over Plaintiff's employment at the Library. *Id*. ¶¶ 201-02. These facts raise an inference of retaliatory conduct sufficient to withstand a motion to dismiss. *See LeGrand*, 779 Fed.Appx. at 783 (allegations that hostile conduct toward the plaintiff increased after the plaintiff complained to her employer's corporate officer about racist comments her supervisory and manager made to the plaintiff's co-workers); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (three weeks between the protected activity and adverse action "sufficiently short to make a prima facie showing of causation indirectly through temporal proximity").

Accordingly, Plaintiff's Supplemental Motion to Amend as against Proposed Defendants Fachko and Purtell in their personal capacities is GRANTED with regard to Plaintiff's proposed § 1981 retaliation claim, but should be DENIED with regard to Plaintiff's proposed § 1981 disparate treatment and hostile work environment claims.

**2. First Amendment Retaliation**

Plaintiff seeks to allege retaliation by Proposed Defendants for complaining about racially disparate treatment in violation of the First Amendment. Supplemental Proposed SAC ¶ 193. Defendants do not directly oppose this claim, but the undersigned addresses it in the interest of completeness.

Section 1983 is the enforcement mechanism for "the First Amendment's guarantee of freedom of speech, which 'prohibits [the government] from punishing its employees in retaliation for the content of their protected speech.'" *Quinones v. City of Binghamton*, 997 F.3d 461, 466 (2d Cir. 2021) (quoting *Locurto v. Safir*, 264 F.3d 154, 166 (2d Cir. 2001)). The First Amendment protects the right of public employees to speak-out without fear of reprisal on issues of public concern. *Frank v. Relin,* 1 F.3d 1317 (2d Cir., 1993), *cert. denied,* 510 U.S. 1012 (1993); *see also Ezekwo v. NYC Health & Hosp. Corp.,* 940 F.2d 775, 780 (2d Cir.1991) ("It is well established that a public employer cannot discharge or retaliate against an employee for the exercise of his or her First Amendment free speech right.").

To state a plausible claim for First Amendment retaliation in the context of employment, Plaintiff must allege: (1) she engaged in speech or conduct protected by the First Amendment; (2) the defendants took an adverse action against her; and (3) a causal connection between the adverse action and the protected speech or conduct. *See O'Connell-Byrne v. Hilton Central School District*, 2024 WL 655601, at * 5 (W.D.N.Y. Feb. 16, 2024) (citing cases including, *inter alia*, *Cox v. Warwick Valley Cent. Sch. Dist*., 654 F.3d 267, 272 (2d Cir. 2011)). Here, the conduct Plaintiff on which Plaintiff relies in support of her First Amendment retaliation claim, *i.e.*, the Grievance,

Supplemental Proposed SAC ¶¶ 190-92, does not qualify as speech or conduct protected by the First Amendment.

"The mere fact of government employment does not result in the evisceration of an employee's First Amendment rights." *Johnson v. Ganim,* 342 F.3d 105, 112 (2d Cir.2003). But public employment does substantially curtail the right to speak freely in a government workplace. *See Mandell v. County of Suffolk,* 316 F.3d 368, 382 (2d Cir.2003) (public employees' free speech rights "are not absolute"). One limitation is that the First Amendment protects a public employee from retaliation by his or her employer for the employee's speech only if "the employee sp[eaks] [1] as a citizen [2] on a matter of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006). The Supreme Court instructs that

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency in reaction to an employee's behavior.

*Connick v. Myers,* 461 U.S. 138, 147 (1983)

A matter of public concern is one that "relat[es] to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–48. Among the relevant considerations is "whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Lewis v. Cowen,* 165 F.3d 154, 163-64 (2d Cir.), *cert. denied,* 528 U.S. 823 (1999). "Speech that, although touching on a topic of general importance, primarily

concerns an issue that is 'personal in nature and generally related to [the speaker's] own situation,' such as his or her assignments, promotion, or salary, does not address matters of public concern." *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) (quoting *Ezekwo v. N.Y.C. Health & Hosps. Corp.,* 940 F.2d 775, 781 (2d Cir.1991), *cert. denied,* 502 U.S. 1013, (1991)). As such, "[t]he heart of the matter is whether the employee's speech was calculated to redress personal grievances or whether it had a broader public purpose." *Ruotolo v. City of N.Y.,* 514 F.3d 184, 189 (2d Cir.2008) (internal quotation omitted). Further, whether a public employee spoke as a citizen on a matter of public concern is a question of law. *Connick,* 461 U.S. at 148 n. 7, 150 n. 10. "Only if the court concludes that the employee did speak in this manner does it move on to the so-called *Pickering*[11] balancing, at which stage 'a court ... balances the interests of the employer in providing effective and efficient public services against the employee's First Amendment right to free expression.'" *Singer v. Ferro*, 711 F.3d 334, 339 (2d Cir. 2013) (quoting *Lewis,* 165 F.3d at 162).

In particular, "[a] public employee's speech is protected by the First Amendment when 'the employee spoke as a private citizen and . . . the speech at issue addressed a matter of public concern.'" *Quinones*, 997 F.3d at 466 (quoting *Montero v. City of Yonkers*, 890 F.3d 386, 393 (2d Cir. 2018)). "'To constitute speech on a matter of public concern, an employee's expression must be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Id.* (quoting Montero, 890

[11] *Pickering v. Board of Educ.,* 391 U.S. 563, 568 (1968) (providing the determination whether a public employer has violated the First Amendment by firing a public employee for engaging in speech requires "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.").

F.3d at 399) (further internal quotation omitted in *Quinones*). Nevertheless, "speech that is 'calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection.'" *Id.* (quoting *Montero*, 890 F.3d at 400) (further internal quotation omitted in *Quinones*). Accordingly, "the First Amendment does not protect speech that 'principally focuses on an issue that is personal in nature and generally related to the speaker's own situation.'" *Id.* at 467 (quoting *Montero*, 899, F.3d at 399) (alterations and internal citations omitted in *Quinones*).

In the context of employment, the difference in speech or conduct protected under anti-discrimination statutes such as Title VII and that protected under the First Amendment is that under the anti-discrimination statutes, the speech must be "in opposition to an unlawful employment practice," *Bell v. Baruch College*, 2018 WL 1274782, at *6 (S.D.N.Y. Mar. 9, 2018), whereas under the First Amendment, the speech must be made "as a citizen" and "on a matter of public concern." *Singer v. Ferro*, 711 F.3d 334, 339 (2d Cir. 2013). As such, "complaints about individual acts of discrimination or harassment are *not* generally deemed to be of 'public concern,'" *Alexander v. City of New York*, , at *13 (S.D.N.Y. Aug. 25, 2004) (italics in original) (citations omitted), except when they allege system-wide discrimination. *Id*. (citing *Wise v. New York City Police Dep't*, 928 F. Supp. 355 (S.D.N.Y. 1996) (sexual harassment complaints held matters of public concern where complaints pertained to plaintiff and other women in police department)).

In the instant case, the Supplemental Proposed SAC alleges that Proposed Defendants terminated Plaintiff's employment to retaliate against Plaintiff for filing the

Grievance on March 14, 2022, in which Plaintiff complained of disparate treatment based on her race and a racially hostile work environment. Plaintiff's filing of the Grievance, however, did not constitute protected activity under the First Amendment. In particular, the Grievance was "calculated to redress personal grievances," rather than a "broader public purpose." *Ruotolo*, 514 F.3d at 189. Specifically, the Grievance alleged race discrimination and harassment. Accordingly, Plaintiff has not alleged that she engaged in First Amendment protected speech by filing the Grievance on March 14, 2022 in which Plaintiff complained about racial discrimination to which she maintains she was subjected while working at the Library. Plaintiff's Supplemental Motion to Amend must thus be DENIED insofar as Plaintiff seeks to assert a First Amendment retaliation claim against Proposed Defendants in their personal capacities.

**3. Fourteenth Amendment Claims**

Plaintiff also seeks to allege Proposed Defendants in their personal capacities, in violation of the Fourteenth Amendment, deprived her of equal protection by subjecting her to disparate treatment based on her race, Supplemental Proposed SAC ¶¶ 235-254, and then terminating Plaintiff's employment to retaliate against Plaintiff for complaining about race-based disparate treatment, *id*. ¶¶ 255-72, and further deprived Plaintiff of due process by failing to follow established procedures in terminating Plaintiff's employment thereby depriving Plaintiff of her protected liberty interest in her continued employment. *Id*. ¶¶ 271-92.[12] As discussed, Discussion, *supra*, at 32, Defendants did not respond in opposition to these claims Plaintiff seeks to assert other than to argue they are time-barred.

[12] The court notes the Supplemental Proposed SAC contains two sets of paragraphs numbered 271 and 272.

"The Fourteenth Amendment provides public employees with the right to be 'free from discrimination.'" *Vega*, 801 F.3d at 87 (quoting *Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir. 2006)). Accordingly, "public employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." *Vega*, 801 F.3d at 87 (citing *Back*, 365 F.3d at 122–23). *See also Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 277 (1986) ("public employers, including public schools, also must act in accordance with a 'core purpose of the Fourteenth Amendment' which is to 'do away with all governmentally imposed discriminations based on race.'" (quoting *Palmore v. Sidoti,* 466 U.S. 429, 432 (1984)).

A plaintiff alleging discrimination in public employment in violation of the Fourteenth Amendment may bring suit pursuant to § 1983 against a defendant in her personal capacity. *Naumovski v. Norris*, 934 F.3d 200, 215 (2d Cir. 2019); *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004). This includes claims for disparate treatment, *see Chislett*, 2025 WL 2725669, at * 6, hostile work environment, *see id*., and retaliation, *see Feingold*, 366 F.3d at 160. Accordingly, Plaintiff's Supplemental Motion to Amend should not be dismissed based on an inability to state a § 1983 claim simply because it is predicated on a violation of the Fourteenth Amendment's Due Process and Equal Protection Clauses. To state such claim, the plaintiff must plausibly allege that she suffered an adverse employment action because of her membership in a protected category. *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019). Further, the defendant must be personally involved in the alleged constitutional deprivation. *Brandon v. Kinter*, 938 F.3d 21, 36 (2d Cir. 2019).

**a. Equal Protection**

In the Supplemental Proposed SAC, Plaintiff seeks to assert § 1983 claims against Proposed Defendants for denial of equal protection based on racially disparate treatment, Supplemental Proposed SAC ¶¶ 235-54, and retaliation. *Id*. ¶¶ 255-72. Defendants have not argued in opposition to these proposed amendments.

"Once action under color of state law is established, [Plaintiff's] equal protection claim parallels [her] Title VII claim[s]." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004). "The elements of one are generally the same as the elements of the other and the two must stand or fall together." *Id*. (citing *Annis v. County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998) ("In analyzing whether conduct was unlawfully discriminatory for purposes of § 1983, we borrow the burden-shifting framework of Title VII claims."); *Jemmott v. Coughlin,* 85 F.3d 61, 67 (2d Cir.1996) (stating that "Title VII law . . . is utilized by courts considering § 1983 Equal Protection claims" and recognizing that "several circuits have held that, when § 1983 is used as a parallel remedy with Title VII in a discrimination suit ... the elements of the substantive cause of action are the same under both statutes.")).

**i. Disparate Treatment and Selective Enforcement**

To state an equal protection claim under § 1983 in the context of employment, a "plaintiff must allege that similarly situated persons have been treated differently." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994). "'A finding of 'personal involvement of [the individual] defendants' in an alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983." *Feingold*, 366 F.3d at 159

(quoting *Provost v. City of Newburgh,* 262 F.3d 146, 154 (2d Cir.2001) (further internal quotation omitted) (bracketed material in *Feingold*).

As discussed above, Plaintiff has sufficiently alleged she was subjected to disparate treatment while employed at the Library insofar as she was subjected to treatment that was different and unequal compared to white employees including, *inter alia*, that Plaintiff was denied a "sign-on bonus," Supplemental Proposed SAC ¶ 86, not supported in her job responsibilities when she was not added to the "system" that would allow Plaintiff to check out books for the Inventors program, *id*. ¶ 87, denied training on and access to library collection development software, *id*. ¶ 89, denied lunch breaks, *id*. ¶ 92, denied materials and staffing for the Inventors program, *id*. ¶¶ 93-95, required to answer the telephone, *id*. ¶ 96, not permitted to work remotely, *id*. ¶ 97, not permitted to attend meetings by Zoom, *id*. ¶ 98, and denied assignments to develop a book collection in the Children's Department. *Id*. ¶ 101. Although these allegations do assert that Plaintiff was subjected to disparate treatment as compared to white Library employees, *Gagliardi*, 18 F.3d at 193, the Supplemental Proposed SAC fails to allege that either Fachko or Purtell was personally involved in such conduct.

Plaintiff's allegations in the Supplemental Proposed SAC that Plaintiff's employment was subjected to disciplinary measures and terminated for violations of workplace policies, which Plaintiff maintains was not based on legitimate work performance concerns, while other employees were not subjected to similar discipline or termination for violating workplace policies, Supplemental Proposed SAC ¶¶ 238-39, may assert a selective enforcement claim under the Equal Protection Clause. "To prevail on such a claim, a plaintiff must prove that (1) [she], compared with others

similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019). A comparator is similarly situated to the plaintiff when "the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance." *Id.* at 96. To establish the second prong, "plaintiffs must prove that the disparate treatment was *caused by* the impermissible motivation. They cannot merely rest on a showing of disparate treatment." *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) (italics in original); *see also Hu*, 927 F.3d at 91 (defining "impermissible considerations" to "protect[ ] against both discrimination on the basis of a plaintiff's protected status (*e.g.*, race or a constitutionally-protected activity) and discrimination on the basis of a defendant's personal malice or ill will towards a plaintiff").

Here, Plaintiff asserts in the Supplemental Proposed SAC that despite using foul language in responding to library patrons, a father and his two young children, conduct which Plaintiff maintains the Library's workplace conduct policy requires immediate termination of employment, Castaneda, Plaintiff's co-worker who is white, was not terminated. Supplemental Proposed SAC ¶¶ 37, 42. In contrast, Plaintiff was terminated without cause and without following the Library's disciplinary procedures. *Id*. These putative allegations, nevertheless, fail on several grounds to allege a Fourteenth Amendment selective enforcement claim.

In particular, the Supplemental Amended Complaint is devoid of any allegations establishing that Castaneda was similarly situated to Plaintiff, who was a probationary

employee when she was discharged and, thus, entitled to fewer protections. Nor does the portion of the Library's workplace conduct policy on which Plaintiff relies require an employee's immediate termination upon violating certain policies; instead, the quoted policy provides only that such employee "may" be terminated. *Id*. ¶¶ 41-42. Furthermore, Plaintiff's assertions in the Supplemental Proposed SAC fail to establish that either of the Proposed Defendants, *i.e.*, Fachko or Purtell, was personally involved in the incident involving Castaneda; rather, Plaintiff maintains it was Dougherty who handled the matter. Supplemental Proposed SAC at 37-42. Accordingly, Plaintiff's Supplemental Motion to Amend should be DENIED as to this claim.

Accordingly, the Supplemental Proposed SAC fails to allege a Fourteenth Amendment equal protection claim based on disparate treatment or selective enforcement such that Plaintiff's Supplemental Motion to Amend should be DENIED as to these proposed claim against Proposed Defendants in their personal capacities.

**ii. Retaliation**

"[T]he elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII, [requiring the plaintiff to] plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against h[er], (3) because [s]he complained of or otherwise opposed discrimination." *Vega*, 801 F.3d at 91. Here, the Supplemental Proposed SAC adequately alleges a claim for relief against the individual Proposed Defendants.

Specifically, as discussed, Discussion, *supra*, at 48-49, the allegations of the Supplemental Proposed SAC allege that Fachko, acting in her official capacity as Library's Assistant Deputy Director of HR, and Purtell, then acting in her official capacity

as the Library's Interim Director, were personally involved both in reviewing and denying Plaintiff's internal complaint, Supplemental Proposed SAC ¶¶ 74, 76, and in terminating Plaintiff's employment only three days after Plaintiff submitted the Grievance. *Id*. ¶¶ . It is undisputed that Plaintiff's complaining of race-based employment discrimination by filing the internal complaint was protected activity, *see Raniola v. Bratton*, 243 F.3d 610, 624-25 (2d Cir. 2001) (internal complaints made to management are protected activity), and that the termination of Plaintiff's employment is an adverse employment action. *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019) (termination of employment can be an adverse employment action for purposes of retaliation claim). Further, the temporal proximity of Plaintiff's submission on March 14, 2022, of the internal complaint regarding racial discrimination in the terms of Plaintiff's employment, and the adverse employment action by terminating Plaintiff's employment on March 17, 2022, sufficiently plausibly establishes Plaintiff's employment was terminated because she complained of race-based employment discrimination. Accordingly, Plaintiff's Supplemental Motion to Amend is GRANTED insofar as Plaintiff seeks to assert a Fourteenth Amendment equal protection claim against Proposed Defendants in their personal capacities for retaliatory termination of her employment for complaining about race-based employment discrimination.

**b. Due Process**

Plaintiff seeks to allege that in terminating Plaintiff's employment, Proposed Defendants deprived Plaintiff of both her property and liberty interests without due process of law. Supplemental Proposed SAC ¶¶ 271-92. In particular, Plaintiff seeks to allege that Proposed Defendants failed to abide by the relevant portions of the Union's

CBA when terminating Plaintiff's employment without providing Plaintiff with notice, a hearing, or an opportunity to respond to the termination, and the termination of Plaintiff's employment has damaged Plaintiff's professional reputation and to lose employment opportunities. *Id*.

### i. Property Interest

In *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court held that a pre-termination hearing in connection with the dismissal of a public employee is required. *See Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 144 (2d Cir. 1993) (citing *Zinker v. Doty*, 907 F.2d 357, 360-61 (2d Cir. 1990)). The Supplemental Proposed SAC, however, does not allege that Plaintiff had a protected property interest in her job with the Library.

"Property interests under the Due Process Clause are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 212 (2d Cir. 2003) (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972)). "'A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge.'" *Id*. (quoting *Ciambriello v. County of Nassau,* 292 F.3d 307, 313 (2d Cir. 2002) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991))). "Nevertheless, '[a] probationary employee who can be dismissed at will does not have a property interest in continued employment, and his dismissal does not trigger a right to due process.'" *Watson v. City of Buffalo*, 164 F.3d 620 (2d Cir. 1998) (quoting *Finley v. Giacobbe,* 79 F.3d 1285, 1297-98 (2d Cir.1996)). This is because "property interests are created not

by the Constitution but by other sources of rules, including state laws, that govern benefits and entitlements." *Id*. (citing *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). The Second Circuit has specifically recognized that "[u]nder New York law, a probationary employee ''has no property rights in his position.'" *Id*. (quoting *Finley,* 79 F.3d at 1297 (quoting *Meyers v. City of New York*, 622 N.Y.S.2d 529, 532 (2d Dep't 1995))). Accordingly, if Plaintiff was a probationary employee when her employment was terminated, then she had no property interest in such employment to support a Fourteenth Amendment due process claim. *Id*. (citing *Finley,* 79 F.3d at 1298).

Although the Supplemental Proposed SAC does not specifically allege that Plaintiff was a probationary employment when her employment was terminated on March 17, 2022, that fact is established in the EEOC Charge, a copy of which Plaintiff attached as Exhibit A to the Supplemental Proposed SAC (Dkt. 64-1 at 1-10). Specifically, in the EEOC Charge, Plaintiff claimed that on March 17, 2022, after her employment was terminated earlier that day, Plaintiff sent an e-mail to Gaff asking to attend via Zoom a March 18, 2022 Union meeting. In an e-mail sent on March 18, 2022, Gaff denied Plaintiff's request to attend the Union meeting stating "[i]n accordance with New York State law, when hired for a permanent position there is a probationary period. During the probationary period, an employee can be removed from service without cause." EEOC Charge, Dkt. 64-1 at 9. Because when considering whether a complaint states a claim the court is permitted to consider exhibits attached to a complaint, the court may also consider the EEOC Charge when considering whether the Supplemental Proposed SAC is futile. *See Avon Pension Fund v. GlaxoSmithKline PLC,* 343 Fed.Appx. 671, * 3 n. 2 (2d Cir. Aug.24, 2009) (considering,

on motion seeking leave to file amended complaint a transcript of testimony not attached to proposed amended complaint but incorporated by reference). Significantly, Gaff's statement regarding probationary employment, as recorded by Plaintiff in the EEOC Charge, asserts Plaintiff's status was as a probationary employee when her employment was terminated on March 17, 2022. Plaintiff thus has failed to plausibly allege a Fourteenth Amendment due process claim based on a denial of a protected property interest. Plaintiff's Supplemental Motion to Amend thus should be DENIED insofar as Plaintiff seeks to allege against Proposed Defendants in their personal capacities a denial of a protected liberty interest in violation of the Fourteenth Amendment Due Process Clause based on an entitlement to a pretermination hearing.

**ii. Liberty Interest**

Plaintiff also seeks to allege against Proposed Defendants in their personal capacities a deprivation of Fourteenth Amendment due process based on a denial of a protected liberty interest based on damage to her reputation and professional standing, impairing Plaintiff's career path by preventing Plaintiff from obtaining employment, resulting in a negative impact on Plaintiff's economic livelihood. Supplemental Proposed SAC ¶¶ 109-15, 277, 279, 286, 288. Again, despite opposing Plaintiff's Supplemental Motion to Amend, Defendants provide no argument in opposition to this proposed claim.

"[F]or public employees to assert cognizable violations of their liberty interest, the defamation complained of must occur 'in the course of the termination of employment.'" *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143–44 (2d Cir. 1993) (quoting *Paul v. Davis,* 424 U.S. 693, 709 (1976), and citing *Easton v. Sundram,* 947 F.2d 1011, 1016

(2d Cir.1991), *cert. denied,* 504 U.S. 911 (1992), and *Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir.), *cert. denied,* 493 U.S. 816 (1989)). As such, if negative statements to Plaintiff's prospective employers were made after the termination of Plaintiff's employment, "then that defamation was 'merely a tort, cognizable at state law, but not a constitutional deprivation.'" *Id*. (quoting *Neu,* 869 F.2d at 667).

Here, the Supplemental Proposed SAC does not contain any allegations that any negative statements were made by Proposed Defendants to Plaintiff's prospective employers. Rather, the relevant allegations of the Supplemental Proposed SAC assert that since Plaintiff's employment was terminated, all employment applications that Plaintiff has completed in attempting to secure employment in the education and library fields have contained questions asking whether Plaintiff was ever terminated from a previous job. *See*, *e.g.*, Supplemental Proposed SAC ¶ 111 ("Because public-sector job applications routinely inquire about prior terminations, the circumstances surrounding Plaintiff's dismissal will remain a permanent and recurring factor in her future employment opportunities."). Put another way, Plaintiff is seeking to assert that it is her own statements to prospective employers that Plaintiff maintains are likely to impede her ability to secure future employment in the education and library fields. Further, Plaintiff does not seek to allege that by answering such questions in the affirmative, Plaintiff would also be required to explain in any negative fashion the circumstances of the termination of her employment at the Library on March 17, 2022. To the contrary, Plaintiff's statement in the EEOC Charge attributed to Gaff is that Plaintiff was considered to have been terminated during her probationary period "without cause." EEOC Charge (Dkt. 64-1) at 9. Moreover, that Gaff's statement was made in an e-mail

sent on March 18, 2022 establishes it was not made in the course of terminating Plaintiff's employment.[13]

The Supplemental Proposed SAC thus fails to plausibly allege that Plaintiff suffered a Fourteenth Amendment due process violation based on a deprivation of a protected liberty interest in her reputation and professional standing and Plaintiff's Supplemental Motion to Amend should be DENIED as to such claim against Proposed Defendants in their personal capacities.

**C. Summary**

In summary, with regard to Plaintiff's proposed Title VII claims, Plaintiff's Supplemental Motion to Amend is GRANTED as to the proposed Title VII disparate treatment claim, and the proposed Title VII retaliation claim against Library Defendants, but should be DENIED as to the proposed Title VII hostile work environment against Library Defendants, and should be DENIED as to all proposed Title VII claims against Proposed Defendants.

As for Plaintiff's proposed § 1983 claims, Plaintiff's Supplemental Motion to Amend should be DENIED insofar as Plaintiff seeks to assert any § 1983 claims, including § 1983 claims based on violations of § 1981, the First Amendment, and the Fourteenth Amendment, against the Library Defendants as well as against Proposed Defendants in their official capacities.

With regard to the proposed § 1983 claims against Proposed Defendants in their personal capacities, Plaintiff's Supplemental Motion to Amend is GRANTED with regard to Plaintiff's proposed § 1981 retaliation claim, and the proposed Fourteenth

[13] It is not plausible that Gaff's statement could be attributed to Proposed Defendants as Plaintiff alleges Gaff was a Union member and Plaintiff does not allege he held any official Library position.

Amendment equal protection claim for retaliatory termination of Plaintiff's employment, but should be DENIED as to Plaintiff's proposed § 1981 disparate treatment and hostile work environment claims, the proposed First Amendment retaliation claim, the proposed Fourteenth Amendment equal protection claims based on disparate treatment and selective enforcement, and the proposed Fourteenth Amendment due process claims for the denial of a protected liberty interest based on an entitlement to a pretermination hearing, as well as for damage to Plaintiff's reputation and professional standing.

Plaintiff should be allowed to file a second amended complaint containing only the claims as permitted by the court in this Report and Recommendation and Decision and Order.

**2. Motion to Proceed *In Forma Pauperis***

In her Motion for IFP Status, Plaintiff moves for permission to proceed *in forma pauperis*. Preliminarily, although filed as a motion, Dkt. 70 is a document Plaintiff filed in support of her Motion for IFP Status and is thus DISMISSED as moot. When Plaintiff filed the original Complaint to commence this action on February 12, 2024, Plaintiff also paid the requisite filing fee. *See* Docket, February 12, 2024 entry noting Plaintiff's payment of filing fee. Plaintiff did not then move for leave to proceed IFP, but did move for appointment of counsel in which Plaintiff explained she was not in possession of sufficient funds to hire an attorney to represent her in this action. Motion for Appointment of Counsel (Dkt. 2). At the same time, Plaintiff also filed an Application for Order Directing Service by U.S. Marshal pursuant to Fed.R.Civ.P. 4(c)(3), explaining the request was made because Plaintiff no longer resides in New York State and wants to make sure process was correctly made. Marshal Service Application (Dkt. 3). By Text

Order entered March 6, 2024 (Dkt. 6), Plaintiff's Marshal Service Application was granted with Plaintiff directed to pay the service fee to the U.S. Marshal. By Text Order entered on March 12, 2024 (Dkt. 7), Plaintiff's Motion for Appointment of Counsel was granted, limited to assisting Plaintiff with filing an amended complaint, with E. Peter Pfaff, Esq., appointed as Plaintiff's limited *pro bono* counsel on April 14, 2024. (Dkt. 12). On May 2, 2024, Plaintiff wrote to the undersigned requesting another attorney with more experience in employment discrimination cases be appointed to represent her in this action, Dkt. 15, and Mr. Pfaff followed on May 10, 2024 with a motion to withdraw as Plaintiff's counsel (Dkt. 16), which was granted by the undersigned on August 8, 2024 (Dkt. 18). The undersigned did not immediately follow through with his intention to appoint new *pro bono* counsel for Plaintiff because Plaintiff, by letter dated September 26, 2024 (Dkt. 22), advised the undersigned that she had obtained employment for which the pay exceeded the eligibility threshold for appointment of *pro bono* counsel, and thus new *pro bono* counsel was not appointed.

On November 25, 2024, Plaintiff filed a motion for permission to proceed IFP (Dkt. 24) ("Initial IFP Motion"). In an Order filed January 16, 2025 (Dkt. 32) ("January 16, 2025 Order"), the undersigned denied the Initial IFP Motion because Plaintiff had already paid the filing fee for this action, January 16, 2025 Order at 2, and the financial affidavit accompanying the motion indicated Plaintiff had monthly income in excess of $ 5,000, but expenses of only $ 1,435 such that Plaintiff did not qualify for IFP status. *Id*. at 3. Now before the court is Plaintiff's second Motion for IFP Status (Dkt. 69), support of which Plaintiff argues that since she does not have the funds necessary to litigate this action. IFP Supporting Document (Dkt. 70). Although the financial affidavit

accompanying Plaintiff's Motion for IFP Status indicates Plaintiff may meet the criteria for IFP Status (Dkt. 69), that does not change the fact that Plaintiff has already paid the filing fee and, consistent with other determinations by this court, Plaintiff's request for IFP status thus is moot. *See*, *e.g.*, *Williams v. Baxter*, 2025 WL 2380842, at *1 (W.D.N.Y. Aug. 15, 2025) (denying as moot *pro se* plaintiff's motion to proceed *in forma pauperis* because the plaintiff had already paid the filing fee); *Harrison v. Wolcott*, 2020 WL 3000389, at *1 (W.D.N.Y. June 4, 2020) (payment of filing fee after moving for IFP status rendered the motion moot); *Evariste v. Barr*, 2019 WL 5694258, at *7 (W.D.N.Y. Nov. 4, 2019) ("The Motion for Leave to Proceed *In Forma Pauperis* is denied as moot, Petitioner having already paid the filing fee."). Accordingly, Plaintiff's Motion for IFP Status is DENIED.

**3. Discovery Motions**

Pending before the court are numerous motions filed by Plaintiff seeking to compel discovery, preclude discovery, and amendment of the Scheduling Order with regard to discovery. In particular, on June 3, 2025, Plaintiff filed the Motion to Extend Deadlines (Dkt. 53), and Motion to Admit Evidence (Dkt. 54). On July 7, 2025, Plaintiff filed Plaintiff's Motion to Compel (Dkt. 62), and Motion to Modify Scheduling Order (Dkt. 63). On August 26, 2025, Plaintiff filed the Motion to Compel Initial Disclosures (Dkt. 72), and Motion to Correct the Caption (Dkt. 73). On September 2, 2025, Plaintiff filed the Motion to Reopen Initial Disclosures (Dkt. 75). On September 25, 2025, Plaintiff filed the Motion for Protective Order (Dkt. 79).

In her Motion to Extend Deadlines (Dkt. 53), Plaintiff seeks an extension of time to complete discovery pursuant to Fed.R.Civ.P. 26 ("Rule 26") (initial disclosures), and

34 ("Rule 34") (document demands), explaining the extension is necessary to permit the completion of such discovery prior to the initial mediation conference scheduled for September 10, 2025. Motion to Extend Deadlines at 3 ¶ 9, 17-18. Plaintiff attributes Defendants' failure to timely comply with Rule 26 discovery, and to reply to Rule 34 document requests to Plaintiff's failure to sign such discovery requests, but after Plaintiff, with Defendants' consent, resent the discovery requests, Defendants denied ever receiving the requests for which, to date, Defendants have not provided responses. *Id*. at 3-6 ¶¶ 9-17. In her Motion to Admit Evidence (Dkt. 54), Plaintiff seeks a court order that two audio recordings in Plaintiff's possession, including at the February 17, 2022 counseling meeting and at the February 25, 2022 meeting between Plaintiff and Fachko ("the audio recordings"), are admissible at mediation between the parties, Motion to Admit Evidence at 8, as well as admissible at trial. *Id*. at 2-4, 9. Defendants do not oppose these motions other than to argue that whether the two audio recordings are admissible at trial is akin to a motion *in limine* and, thus, premature. Defendants' Response to Extension and Admission of Evidence (Dkt. 58), at 2. Plaintiff's Motion to Admit Evidence is thus moot insofar as Defendants agree that Plaintiff may rely on the audio recordings at mediation. Defendants also suggest extending the deadline for initial disclosures from February 13, 2025 to July 30, 2025, and the deadline for Plaintiff to initiate discovery from March 3, 2025 to July 30, 2025. *Id*. Accordingly, Plaintiff's Motion to Extend Deadlines is GRANTED. An amended scheduling order will issue after the District Judge rules on any objections and the further amended complaint is filed.

With respect to Plaintiff's Motion to Admit Evidence, however, Plaintiff replies by specifying that she "seeks to confirm the status of the operative complaint, the proper identification of defendants, the precise legal claims currently before the Court, the procedural posture affecting the parties' obligations and remedies, and the scope and sufficiency of discovery responses to date," Plaintiff's Reply Re: Motions to Admit and Extend at 2, and provides pages of argument in support of these assertions. *Id*. a 2-21. The court, however, will not address these arguments because they have not been properly raised in a motion to which Defendants are able to respond, and, further, the court's discussion regarding Plaintiff's Supplemental Motion to Amend addresses much of what Plaintiff seeks.

Plaintiff also argues in further support of her Motion to Admit Evidence that the motion is not premature insofar as she seeks a determination that the audio recordings are admissible at trial. Plaintiff's Reply Re: Motions to Admit and Extend at 21-22. Plaintiff asserts that there is no basis to Defendants' opposition to the court determining the audio recordings are admissible at trial because Plaintiff is prepared to authenticate at trial the audio recordings which were made within the context of "routine workplace interactions and reflect conduct directly at issue in this litigation." *Id*. at 21-22. As Defendants argue, however, whether the audio recordings can be admitted at trial is a matter for a motion *in limine* to be addressed after trial is scheduled. *See Jones v. Harris*, 665 F. Supp. 2d 384, 404 (S.D.N.Y. 2009) ("*In limine* motions deal with evidentiary matters and are not to be filed until the eve of trial.").

Accordingly, Plaintiff's Motion to Admit Evidence is DISMISSED as moot with regard to Plaintiff's request to use the audio recordings at mediation, and is DENIED

without prejudice as to her request that the court determine the audio recordings are admissible at trial as premature as that issue is properly raised in a pretrial motion *in limine*.

In her Motion to Compel (Dkt. 62), Plaintiff seeks an order directing Defendants provide complete and compliant Rule 26 disclosures, Motion to Compel at 6-8, and respond to Plaintiff's request for production of documents, *id*., as well as granting sanctions pursuant to Fed.R.Civ.P. 37 ("Rule 37") against Defendants for obstructing Plaintiff's ability to prepare for mediation and to pursue filing a further amended complaint. *Id*. at 7-9. In her Motion to Modify Scheduling Order (Dkt. 63), Plaintiff seeks to modify the January 16, 2025 Scheduling Order (Dkt. 34) to extend the deadlines for adding Defendants and serving and receiving discovery requests pursuant to Rule 26 and 34. In opposition to these motions, Defendants argue they timely served Plaintiff with their initial disclosures pursuant to Rule 26(a)(1), which, other than relevant insurance policies, does not require the actual production of documents but only a description of the responsive documents by category and locations, Defendants' First Opposition at 2, and that a copy of the relevant insurance policy was provided to Plaintiff on August 8, 2025, *id*. at 2 n. 2. Defendants also argue that because Plaintiff's document requests were unsigned and thus did not comply with Rule 34, and despite Plaintiff's *pro se* status, Defendants were not required to respond to such requests. *Id*. at 3-4. According to Defendants, Plaintiff's request for sanctions is unwarranted because until the instant motions were filed on July 7, 2025, Plaintiff had not, since June 3, 2025, made any further effort to obtain responses to Plaintiff's outstanding discovery requests. *Id*. at 4. Finally, Defendants oppose any extension of the Scheduling Order

to permit Plaintiff to join additional parties as Defendants and obtain responses to discovery requests. *Id*. at 4-5. In further support of these motions, Plaintiff maintains it is disingenuous of Defendants to simply describe documents responsive to Rule 26 disclosure because it is unrealistic to expect Plaintiff, who now lives in North Carolina, to be able to travel to Buffalo to review the documents, Plaintiff's Reply (Dkt. 68) at 2-3, that although Plaintiff's requests for Rule 34 discovery were unsigned and thus did not comply with Rule 34, Plaintiff acted in good faith, *id*. at 4-5, and the Scheduling Order needs to be amended to permit Plaintiff to obtain discovery in time to prepare for court-ordered mediation scheduled for September 10, 2025, as well as to file a further amended complaint. *Id*. at 5-8.

It is basic that "Magistrate judges are 'afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is abused.'" *Lutz v. Kaleida Health*, 2023 WL 6617737, at *1 (W.D.N.Y. Oct. 11, 2023) (quoting *McNamee v. Clemens*, 2014 WL 1338720, at *2 (E.D.N.Y. Apr. 2, 2014)); *Popat v. Levy*, 2023 WL 4285276, at *2 (W.D.N.Y. June 30, 2023) (the review for clear error "standard 'affords magistrate judges 'broad discretion in resolving discovery disputes.''" (quoting *New Falls Corp. v. Soni*, 2023 WL 3877956, at *1 (E.D.N.Y. June 8, 2023) (quoting *Duffy v. Ill. Tool Works, Inc.*, 2022 WL 1810732, at *1 (E.D.N.Y. June 2, 2022))). In the instant case, Plaintiff's Motion to Compel and Motion to Modify Scheduling Order are moot for the following reasons. With respect to Plaintiff's request for initial disclosure pursuant to Rule 26, as Defendants explain, Defendant were not required to provide Plaintiff with copies of all documents responsive to such requests, but only to describe such documents as well as their locations, and Defendants did provide a copy of the relevant

insurance policy. Further, Plaintiff does not dispute that her Rule 34 discovery requests were procedurally deficient. Nevertheless, Plaintiff's filing of a further amended complaint as permitted by the court's determination regarding Plaintiff's Supplemental Motion to Amend clarifies what parties and issues may proceed before the court and removes that concern from Plaintiff's Motion to Compel. Further, the court has already determined that once Plaintiff files her further amended complaint in accordance with this combined Report and Recommendation and Decision and Order, subject to any modifications by the District Judge, a further scheduling order should issue. Given there has been much confusion regarding what issues are actually before the court, Plaintiff's request for new deadlines for discovery is GRANTED. Plaintiff is reminded that any discovery requests must comply with the applicable Federal Rules of Civil Procedure. Plaintiff's Motions to Compel and to Modify Scheduling Order are otherwise DISMISSED as moot.

Plaintiff's Motion to Compel Initial Disclosures (Dkt. 72), Motion to Correct the Caption (Dkt. 73), and Motion to Reopen Initial Disclosures (Dkt. 75), essentially seeks the same relief as her Motions to Compel (Dkt. 62), and to Modify Scheduling Order (Dkt. 63). They are, accordingly, DENIED as duplicative of Plaintiff's earlier motions. Discussion, *supra*, at 69-72.

In her Motion for Protective Order (Dkt. 79), Plaintiff seeks a court order that she does not have to travel to Buffalo to be deposed by Defendants on November 13, 2025, and, instead, directing Defendants to depose Plaintiff by written questions pursuant to Fed.R.Civ.P. 31 ("Rule 31"). In opposition, Defendants argue that it was Plaintiff's choice to move to North Carolina while her action was pending in the Western District of

New York, Opposition to Protective Order (Dkt. 83) at 2-3. Plaintiff replies that in an earlier action commenced by Plaintiff, *i.e.*, Watson v. New York State United Teachers Union Local Librarians Association of the Buffalo and Erie County Public Library, 23-CV-356-JLS-LGF (W.D.N.Y.), Plaintiff was granted permission to proceed IFP, thus establishing that Plaintiff is indigent and unable to travel to Buffalo to attend an in-person deposition. Reply in Support of Protective Order (Dkt. 84) at 1-2.

> The use of oral depositions is often crucial to an attorney's assessment of the opposing party's case and to preparation for a trial. That is particularly true when, as here, the key issues involve a fairly tangled set of facts that are not susceptible to proof by documentation, and there are potentially significant questions of credibility. Moreover, it has often, and appropriately, been observed that depositions on written questions are a generally inadequate substitute for an oral deposition since there is no meaningful possibility of follow-up questioning and the inquiring party is denied any opportunity to assess the demeanor, and thus the credibility, of the witness in responding to [a] specific question.

*Bromfield v. Bronx Lebanon Special Care Ctr., Inc. al.*, 2021 WL 5847404, at *5 (S.D.N.Y. Dec. 9, 2021) (quoting *Mill-Run Tours, Inc. v. Khoshoggi*, 124 F.R.D. 547, 549–50 (S.D.N.Y. 1989), and citing cases including, *inter alia*, *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 397 (S.D.N.Y. 2006) (noting that "depositions upon written questions are disfavored" and are "rarely an adequate substitute for oral depositions both because it is difficult to pose follow-up questions and because the involvement of counsel in the drafting process prevents the spontaneity of direct interrogation.").

Significantly, employment discrimination like the instant case typically involve issues of fact for which credibility determinations are critical. In such circumstances, requiring Defendants to depose Plaintiff by written questions is not a satisfactory resolution to Plaintiff's financial difficulties. Accordingly, Plaintiff's Motion for Protective Order is DENIED.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion to Extend Deadlines (Dkt. 53) is GRANTED; Plaintiff's Motion to Admit Evidence (Dkt. 54) is DISMISSED as moot in part

and DENIED in part without prejudice; Plaintiff's Motion to Compel (Dkt. 62) is DISMISSED as moot; Plaintif's Motion to Modify Scheduling Order (Dkt. 63) is GRANTED in part and DISMISSED as moot in part; Plaintiff's Supplemental Motion to Amend (Dkt. 64) is GRANTED in part and should be DENIED in part; Plaintiff's Motion for IFP Status (Dkt. 69) is DENIED; Dkt. 70, although denominated as a motion, is a supporting document for Plaintiff's Motion for IFP Status and is DISMISSED as moot; Plaintiff's Motion of Compel Initial Disclosures (Dkt. 72) is DENIED; Plaintiff's Motion to Correct the Caption (Dkt. 73) is DISMISSED as moot; Plaintiffs' Motion to Reopen Initial Disclosures (Dkt. 75) is DISMISSED as moot; and Plaintiff's Motion for a Protective Order (Dkt. 79) is DENIED.

SO ORDERED, as to Plaintiff's Supplemental Motion to Amend insofar as the motion is granted, Plaintiff's Motion Extend Deadlines, Plaintiff's Motion to Admit Evidence, Plaintiff's Motion to Compel, Plaintiff's Motion to Modify Scheduling Order, Plaintiff's Motion for IFP Status, the dismissal of the supporting document for Plaintiff's Motion for IFP Status, Plaintiff's Motion to Compel Initial Disclosures, Plaintiff's Motion to Correct the Caption, Plaintiffs' Motion to Reopen Initial Disclosures, and Plaintiff's Motion for a Protective Order.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Respectfully submitted, insofar as it is recommended that Plaintiff's Supplemental Motion to Amend be denied,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: November 19, 2025

Buffalo, New York

**Any appeal of this Decision and Order must be taken by filing written objection with the Clerk of Court not later than 14 days after service of this Decision and Order in accordance with Fed.R.Civ.P. 72(a).**

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and to the attorneys for the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: November 19, 2025
Buffalo, New York